# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 35050

| | | |
|---|---|---|
| VAUGHN SCHMECHEL, individually and as surviving spouse and personal representative of THE ESTATE OF ROSALIE SCHMECHEL, deceased and ROBERT P. LEWIS, KIM HOWARD and TAMARA HALL, natural children of ROSALIE SCHMECHEL, deceased, | ) ) ) ) ) ) ) ) | Boise, August 2009 Term<br><br>2009 Opinion No. 133<br><br>Filed: October 26, 2009 |
| Plaintiffs-Appellants, | ) ) | Stephen Kenyon, Clerk |
| v. | ) ) ) | |
| CLINTON DILLÉ, M.D., SOUTHERN IDAHO PAIN INSTITUTE, an Idaho corporation, THOMAS BYRNE, P.A., and JOHN DOE and JANE DOE, I through X, | ) ) ) ) ) | |
| Defendants-Respondents. | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Hon. G. Richard Bevan, District Judge.

The decision of the district court is affirmed.

Comstock & Bush, Boise, and Byron V. Foster, Boise, for appellants. Taylor Mossman and David Comstock argued.

Hall Farley Oberrecht & Blanton, P.A., Boise, for respondent Thomas Byrne, P.A. Keely Duke argued. Chris Comstock appeared.

Givens Pursley, LLP, Boise, for respondent Clinton Dillé, M.D. and Southern Idaho Pain Institute. Steven Hippler argued. Will Varin appeared.

---

HORTON, Justice

This is an appeal from a district court's decision denying a new trial after it entered judgments on a jury verdict finding that Dr. Clinton Dillé, M.D., and Mr. Thomas Byrne, P.A., were not negligent in their medical treatment of Rosalie Schmechel, who died shortly after coming under their care at the Southern Idaho Pain Institute (SIPI) in 2003. Mrs. Schmechel's surviving spouse and children (collectively referred to as the Schmechels) contend that the

district court abused its discretion in not granting their motion for a new trial based on their claims that the court erred in excluding testimony from one of their experts, in declining to instruct the jury on negligence per se, in excluding the Idaho Administrative Code (IDAPA) rules governing physician assistants in 2003, in declining to instruct the jury on recklessness, and in allowing testimony from a defense expert.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mrs. Schmechel had been receiving pain management treatment from a medical provider in Sun Valley, Idaho, for ongoing chronic back pain and right leg pain, which she had experienced for approximately 30 years. Owing to the expense and difficulty of travelling to Sun Valley from her home in Twin Falls, Idaho, in order to receive treatment for her pain, in September 2003 Mrs. Schmechel decided to begin seeing a pain management provider in Twin Falls, and thus she sought treatment at SIPI. SIPI is a clinic and surgery center dedicated to pain management treatment. In 2001, Dr. Dillé hired Mr. Byrne to work as a physician assistant at SIPI. In April, 2003, Dr. Dillé and Mr. Byrne entered into a Delegation of Services (DOS) Agreement outlining the working relationship and delegation of duties between them as required by law.

On September 26, 2003, Mr. Byrne saw Mrs. Schmechel. Up to that point, Mrs. Schmechel had been taking OxyContin to manage her pain, and Mr. Byrne suggested that she should discontinue using OxyContin and prescribed her methadone instead. Over the next few days, Mrs. Schmechel and Mr. Byrne spoke on the phone twice, and both times Mr. Byrne advised Mrs. Schmechel to increase her dosage of methadone. After the second call, Mr. Byrne discussed Mrs. Schmechel's case with Dr. Dillé, and Dr. Dillé approved Mr. Byrne's treatment plan although he did not learn the exact dosage of methadone that Mr. Byrne prescribed. On October 2, 2003, Mrs. Schmechel passed away.

On October 3, 2005, the Schmechels brought suit against Dr. Dillé and Mr. Byrne, alleging medical malpractice. In early October 2007 the Schmechels learned of the 2003 IDAPA regulation that required doctors and physician assistants to have DOS Agreements in place. The Schmechels then renewed an earlier request to Dr. Dillé and Mr. Byrne to produce the DOS agreement that existed between them in 2003. Dr. Dillé and Mr. Byrne promptly did so, six days before trial. At the conclusion of the trial, on October 30, 2007, the jury returned a verdict finding that Dr. Dillé and Mr. Byrne were not negligent in their treatment of Mrs. Schmechel.

On November 19, 2007, the Schmechels filed a motion for a new trial, which the district court denied. The Schmechels timely appealed. Because the district court did not abuse its discretion in refusing to grant the Schmechels a new trial, we affirm.

## II. STANDARD OF REVIEW

The Schmechels alleged that four errors occurred at trial and moved the district court for a new trial pursuant to I.R.C.P. 59(a)(1), I.R.C.P. 59(a)(3), and I.R.C.P. 59(a)(7). The district court denied the motion.

> When reviewing a trial court's ruling on a motion for new trial, this Court applies an abuse of discretion standard. A trial court has wide discretion to grant or refuse to grant a new trial, and on appeal this Court will not disturb that exercise of discretion absent a showing of manifest abuse . . . . [T]he test for evaluating whether a trial court has abused its discretion [is]: (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason.

*Dyet v. McKinley*, 139 Idaho 526, 529-30, 81 P.3d 1236, 1239-40 (2003) (citations omitted).

Idaho Rule of Civil Procedure 59(a) governs a motion for a new trial and states in relevant part that:

> A new trial may be granted to all or any of the parties and on all or part of the issues in an action for any of the following reasons:
>
> 1. Irregularity in the proceedings of the court, jury or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial.
> . . . .
> 3. Accident or surprise, which ordinary prudence could not have guarded against.
> . . . .
> 7. Error in law, occurring at the trial.

"In evaluating whether an irregularity in the proceedings merits a new trial, a district court takes into consideration whether the irregularity had any effect on the jury's decision." *Gillingham Const., Inc. v. Newby-Wiggins Const., Inc.*, 142 Idaho 15, 23, 121 P.3d 946, 954 (2005). A motion for a new trial based upon alleged accident or surprise must show prejudice in order to be successful. *Hughes v. State, Idaho Dept. of Law Enforcement*, 129 Idaho 558, 562, 929 P.2d 120, 124 (1996). Where prejudicial errors of law have occurred, the district court has a duty to grant a new trial, even though the verdict is supported by substantial and competent evidence.

*Craig Johnson Const., L.L.C. v. Floyd Town Architects, P.A.*, 142 Idaho 797, 801, 134 P.3d 648, 652 (2006).

However,

> [n]o error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

I.R.C.P. 61; *see also Burgess v. Salmon River Canal Co., Ltd.*, 127 Idaho 565, 575, 903 P.2d 730, 740 (1995) ("No error in either the admission or the exclusion of evidence is grounds for granting a new trial . . . unless refusal to take such action appears to the court to be inconsistent with substantial justice.").

### III. ANALYSIS

The district court recognized that the decision whether to grant a new trial was within its discretion.[1] Whether the district court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices before it and whether it reached its decision not to grant a new trial by an exercise of reason requires scrutiny of the court's consideration of each of the Schmechels' alleged errors. We first address the Schmechels' arguments regarding the jury's findings that Dr. Dillé and Mr. Byrne did not breach the applicable standard of care. Because we conclude that these alleged errors do not warrant a new trial, we decline to reach the Schmechels' arguments regarding the introduction of expert testimony relating to the cause of Mrs. Schmechel's death.

**A.  The district court did not abuse its discretion in not granting a new trial based on the exclusion of Dr. Lordon's testimony regarding the 2003 DOS Agreement.**

The Schmechels urge that the district court should have granted a new trial pursuant to I.R.C.P. 59(a)(1), I.R.C.P. 59(a)(3), and I.R.C.P. 59(a)(7) because it abused its discretion in precluding their medical expert, Dr. Lordon, from testifying regarding the 2003 DOS Agreement on the grounds that his opinion had not been disclosed to Dr. Dillé and Mr. Byrne as required by I.R.C.P. 26(e). Specifically, the Schmechels contend that Dr. Lordon was prevented from

---

[1]     It should be noted that the Schmechels fail to list the district court's denial of their motion for a new trial as an issue on appeal. Ordinarily, under I.A.R. 35(a)(4), such a failure eliminates consideration of the issue in the appeal; however, the rule may be relaxed where, as here, the issue is addressed by arguments contained in the body of the brief. *Everhart v. Washington County Road and Bridge Dept.*, 130 Idaho 273, 274, 939 P.2d 849, 850 (1997).

testifying that non-compliance with the 2003 DOS Agreement resulted in Dr. Dillé and Mr. Byrne breaching the standard of care and that because this testimony was crucial to their case, the Schmechels were prejudiced by the court's decision not to allow it.

Whether to exclude undisclosed expert testimony pursuant to I.R.C.P. 26(e)(4) is committed to the sound discretion of the trial court. *Viehweg v. Thompson*, 103 Idaho 265, 271, 647 P.2d 311, 317 (Ct. App. 1982) (citing *Matter of Webber's Estate*, 97 Idaho 703, 707-08, 551 P.2d 1339, 1343-44 (1976)). The test for determining whether a district court abused its discretion is: (1) whether the court correctly perceived that the issue was one of discretion; (2) whether the court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether it reached its decision by an exercise of reason. *Sun Valley Shopping Center Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

Idaho Rule of Civil Procedure 26(e) states in relevant part that:

> A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired, except as follows:
>
> (1) A party is under a duty seasonably to supplement the response with respect to any question directly addressed to . . . (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person's testimony.

The rule goes on to state that:

> (4) If a party fails to seasonably supplement the responses as required in this Rule 26(e), the trial court may exclude the testimony of witnesses . . . not disclosed by a required supplementation of the responses of the party.

This Court stated in *Radmer v. Ford Motor Co.* that I.R.C.P. 26(e) "unambiguously imposes a continuing duty to supplement responses to discovery with respect to the substance and subject matter of an expert's testimony where the initial responses have been rejected, modified, expanded upon, or otherwise altered in some manner." 120 Idaho 86, 89, 813 P.2d 897, 900 (1991) (citations omitted). The Court went on to note that:

> In cases [involving expert testimony], a prohibition against discovery of information held by expert witnesses produces in acute form the very evils that discovery has been created to prevent. Effective cross-examination of an expert witness requires advance preparation. . . . Similarly, effective rebuttal requires advance knowledge of the line of testimony of the other side. If the latter is foreclosed by a rule against discovery, the narrowing of issues and elimination of surprise which discovery normally produces are frustrated.

*Id.* (quoting Fed. Rule Civ. P. 26 advisory committee's note). Finally, we recognized that:

> It is fundamental that opportunity be had for full cross-examination, and this cannot be done properly in many cases without resort to pretrial discovery, particularly when expert witnesses are involved. . . . Before an attorney can even hope to deal on cross-examination with an unfavorable expert opinion he must have some idea of the bases of that opinion and the data relied upon. If the attorney is required to await examination at trial to get this information, he often will have too little time to recognize and expose vulnerable spots in the testimony.

*Id.* (quoting Friedenthal, *Discovery and Use of an Adverse Party's Expert Information,* 14 STAN. L. REV. 455, 485 (1962)).

The district court correctly recognized that the decision whether to exclude Dr. Lordon's testimony regarding the 2003 DOS Agreement was discretionary. The district court also acted consistently with the legal standards governing non-disclosed expert testimony and reached its decision by an exercise of reason. The district court initially stated that "even though [the 2003 DOS Agreement] wasn't disclosed until last week, . . . the nature of the inquiry and the circumstances surrounding this testimony were known in advance sufficiently to allow this disclosure to have been made. So I will sustain the defendant's objection." The district court elaborated on this ruling:

> I am concluding, based upon my analysis yesterday, that the [Schmechels] did have access to the nature of this information and apparently provided it to their experts in a sufficient time for them to comment and opine as to this theory in a sufficient time to disclose that as an opinion. Certainly, the 2003 [DOS] [A]greement was disclosed late, and negligently so; but the nature of the issue itself and the underlying scope of supervision and service by Dr. Dillé was made known early on and sufficiently so to have a disclosure made before deposition. It was not made. I will stick with my ruling.

The Schmechels argue that the district court's decision to exclude Dr. Lordon's testimony regarding the 2003 DOS Agreement rewarded the unjustified, late disclosure of the 2003 DOS Agreement. The Schmechels point out that they asked Mr. Byrne to bring "any and all delegation of services agreements" to his deposition. When counsel for the Schmechels asked Mr. Byrne whether he had brought that documentation with him to his deposition, counsel for Dr. Dillé explained that it was his understanding that the Idaho Board of Medicine (the Board) did not require a DOS agreement until 2004 and that therefore they were producing the 2004 DOS Agreement. When asked by the Schmechels' counsel a few moments later whether a DOS agreement was in place in 2003, Mr. Byrne responded that he thought there "was some

documentation that was with the Board of Medicine, but not necessarily a Delegation of Services Agreement." The Schmechels further point out that they renewed their request to Mr. Byrne to produce "any and all delegation of services agreements" in their first set of interrogatories and requests for production. Dr. Dillé and Mr. Byrne answered this request by stating that they had produced documents responsive to that request (the 2004 DOS Agreement as well as a job description) at Mr. Byrne's deposition. The Schmechels contend that they trusted Dr. Dillé's counsel's assertion that the Board did not require a DOS agreement in 2003 and "litigated the case with the faith that counsel would only make such a representation after using due diligence in the inquiry."

The lack of diligence on the part of Dr. Dillé and Mr. Byrne, however, does not excuse the Schmechels' own lack of diligence. It was not until early October that the Schmechels' attorney reviewed the applicable 2003 regulations and concluded that the Board did in fact require a signed DOS agreement in 2003. If, as the Schmechels contend, a major theory of their case was that Mr. Byrne breached the standard of care by acting outside the permissible scope of his employment, their failure to research the applicable law on this issue is inexplicable. A simple reading of the rules governing physician assistants in 2003 reveals the requirement that a DOS agreement be in place.[2] If the Schmechels had read this section early on in preparing for trial, at the very least, despite the negligence of Dr. Dillé and Mr. Byrne regarding production of the 2003 DOS Agreement, the Schmechels could have timely disclosed that Dr. Lordon would testify as to the import of the absence of such an agreement. Such a disclosure would have given Dr. Dillé and Mr. Byrne "advance knowledge of the line of testimony." *Radmer*, 120 Idaho at 89, 813 P.2d at 900. Instead, the Schmechels made no disclosure on this issue. For these reasons, we conclude that the district court did not abuse its discretion, pursuant to I.R.C.P. 26(e)(4), in disallowing Dr. Lordon's testimony.

Further, as the district court correctly observed in ruling on the Schmechels' motion for a new trial, "the late disclosure of the 2003 [DOS Agreement] on October 11, 2007 is not the type of '[a]ccident or surprise, which *ordinary prudence could not have guarded against*' that warrants a new trial." (Emphasis original). The district court went on to state that

---

[2] IDAPA § 22.01.03.030.04 (2003) states in relevant part that "[e]ach licensed physician assistant shall maintain a current copy of a Delegation of Services (DOS) Agreement. . . . This agreement shall not be sent to the Board, but must be maintained on file at each location in which the physician assistant is practicing."

> [l]ikewise, considering that prior to trial the Schmechels did not disclose potential expert testimony regarding any [DOS Agreement] or the apparent failure to have a [DOS agreement] in 2003, it was within the court's discretion to exclude the testimony. *Viehweg v. Thompson*, 103 Idaho at 271, 647 P.2d at 317. Had the court permitted such testimony, defendants would have been presented with undisclosed expert testimony which they argued at trial they were unprepared to rebut. As such, the court properly used its discretion and the exclusion [of Dr. Lordon's testimony] was neither an irregularity in the proceeding or an error of law. I.R.C.P. 59(a)(1); I.R.C.P. 59(a)(7).

In short, the Schmechels' failure to disclose Dr. Lordon's opinions regarding the 2003 DOS Agreement was due as much to their own neglect as that of Dr. Dillé and Mr. Byrne. We conclude that the district court did not abuse its discretion in excluding Dr. Lordon's testimony, and therefore the exclusion does not provide a basis for a new trial.

Even if the Schmechels had timely disclosed Dr. Lordon's testimony and been able to present it, it would not have had the legal effect that they urge. The Schmechels allege that Dr. Lordon would have testified that "according to the 2003 DOS Agreement, Mr. Byrne acted outside the scope of the DOS Agreement in prescribing [Mrs. Schmechel's] medication, and thus, breached the standard of care." The Schmechels were essentially seeking to admit testimony that a breach of the DOS Agreement amounted to negligence per se.[3] A DOS agreement, however, does not establish the standard of care in a medical malpractice action, and thus evidence that such an agreement has been breached is not enough, by itself, to establish negligence.

Idaho Code § 6-1012 provides, in relevant part, that to establish that a medical provider has breached the standard of care a

> claimant or plaintiff must, as an essential part of his or her case in chief, affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence, that such defendant then and there negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided, as such standard existed at the time and place of the alleged negligence of such physician and surgeon, hospital or other such health care provider and as such standard then and there existed with respect to the class of health care provider that such defendant then and there belonged to and in which capacity he, she or it was functioning.

---

[3] Of course, testimony that a breach of the 2003 DOS Agreement amounted to negligence per se would have required a corresponding jury instruction. The Schmechels proposed such an instruction, urging that the court instruct the jury that "[f]ailure to follow the duties imposed by the Board of Medicine regulations and/or the Delegation of Services Agreement is a violation of the applicable standard of care." The second issue on appeal concerns this proposed instruction. *See* Part III.B.1, *infra*.

Idaho Code § 6-1013 further specifies that

> [t]he applicable standard of practice and such a defendant's failure to meet said standard must be established . . . by testimony of one (1) or more knowledgeable, competent expert witnesses, and such expert testimony may only be admitted in evidence if the foundation therefor is first laid, establishing (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed.

Read together, these statutes make clear that to establish the standard of care in a medical malpractice suit, an expert must establish the standard of care with testimony regarding the situation in which the provider is alleged to have acted negligently and with reasonable medical certainty. By contrast, medical providers do not draft DOS agreements to govern each specific circumstance of patient care; rather, DOS agreements are general agreements setting forth the patient services delegated to the physican assistant. Furthermore, the reasonable medical certainty with which an expert must testify regards the conviction the expert must have that the provider breached the applicable standard of health care practice, not that the provider breached a DOS agreement.

For the foregoing reasons, we conclude that negligence per se is a doctrine that is not applicable to medical malpractice cases governed by I.C. §§ 6-1012 and 6-1013. This holding is in keeping with this Court's decision in *Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 334, 940 P.2d 1142, 1153 (1997), in which we held that in light of I.C. § 6-1012 the doctrine of *res ipsa loquitur* may no longer be used in medical malpractice cases. The *Kolln* Court specifically relied on the legislature's intent in adopting I.C. § 6-1012 to reach this holding:

> It is the declaration of the legislature that appropriate measures are required in the public interest to assure that a liability insurance market be available to physicians, hospitals and other health care providers in this state and that the same be available at reasonable cost, thus assuring the availability of such health care providers for the provision of care to persons in the state. It is, therefore, further declared to be in the public interest that the liability exposure of such health care providers be limited and made more definable by *a requirement for direct proof of departure from a community standard of practice.*

*Id.* (quoting 1976 Idaho Sess. Laws 277) (emphasis original). Similarly, to allow plaintiffs in medical malpractice suits to establish that a provider has breached the standard of care indirectly by showing that he or she breached a statute or rule flies in the face of the legislature's intent that

- 9 -

plaintiffs prove that the provider breached the standard of care through direct testimony. *Accord*, *Shelton v. Sargent*, 144 S.W.3d 113, 122 (Tex. App. 2004) (holding that plaintiffs in a medical malpractice case could not circumvent the requirement of expert testimony to prove negligence by substituting evidence of violation of a statute).

At most, Dr. Lordon's testimony regarding a breach of the 2003 DOS Agreement may have been relevant evidence bearing on whether the conduct of Dr. Dillé and Mr. Byrne was negligent. Restatement (Second) Torts § 288B (1965) ("The unexcused violation of an enactment or regulation which is not [adopted as defining the standard of care] may be relevant evidence bearing on the issue of negligent conduct"). But even so, if the district court erred in excluding it, such error was harmless and would not warrant a new trial. I.R.C.P. 61. This is because Dr. Lordon's testimony would have been cumulative evidence in light of Mr. Byrne's admission during the Schmechels' case-in-chief that he and Dr. Dillé did not follow the 2003 DOS Agreement to the letter when Mr. Byrne prescribed a treatment plan for Mrs. Schmechel without first having Dr. Dillé review it. *See Bailey v. Sanford*, 139 Idaho 744, 750, 86 P.3d 458, 464 (2004) (holding that exclusion of cumulative evidence was harmless error).

In sum, we hold that the district court did not abuse its discretion in excluding Dr. Lordon's testimony. Even if the district court had erred, Dr. Lordon's testimony that Dr. Dillé and Mr. Byrne failed to follow the 2003 DOS Agreement would not have established that they were negligent, because the doctrine of negligence per se is not applicable in the medical malpractice arena. Though Dr. Lordon's testimony may have been relevant, its exclusion would have been harmless error in light of Mr. Byrne's testimony. Thus the district court did not abuse its discretion in denying the Schmechels' request for a new trial on this basis.

**B. The district court did not abuse its discretion in declining to grant a new trial based on the fact that it did not give the Schmechels' proposed jury instruction on negligence per se and excluded the 2003 IDAPAs.**

The Schmechels contend that it was error, requiring a new trial pursuant I.R.C.P. 59(a)(1), I.R.C.P. 59(a)(3), and I.R.C.P. 59(a)(7), for the district court to decline to give their proposed instruction on negligence per se and to decline to admit the 2003 IDAPAs.

1. Instruction to the jury regarding proof of negligence

The Schmechels' requested jury instruction regarding negligence per se states in relevant part that:

> Under applicable Board of Medicine regulations, the defendants in this case were required to have in place a [DOS] agreement which defined the working relationship between Dr. Dillé and Mr. Byrne. Pursuant to Board of Medicine regulations, a physician assistant may issue written or oral prescriptions only in accordance with approval and authorization granted by the Board of Medicine and in accordance with the [DOS] agreement and shall be consistent with the regular prescriptive practice of the supervising physician.
>
> Under [SIPI's] DOS Agreement applicable to this case, Mr. Byrne was authorized to conduct an initial evaluation of patients seen in the facility, to do a full history and physical, and thereafter document his findings and recommendations. It was the duty of Dr. Dillé, pursuant to the Board of Medicine regulations and the [DOS] agreement, to review the recommendations of Mr. Byrne and to thereafter confirm his findings and to determine a treatment plan.
>
> Failure to follow the duties imposed by the Board of Medicine regulations and/or the [DOS] Agreement is a violation of the applicable standard of care.

The district court concluded that "the IDAPA regulations are not in and of themselves clear and precise enough to allow me to give a negligence [per se] instruction on them." The Schmechels objected to this refusal to give their instruction.

Instead of the Schmechels' requested instruction, the district court instructed the jury that the Schmechels were required to prove negligence by direct expert testimony that either Dr. Dillé or Mr. Byrne, or both, breached the standard of care for similarly trained and qualified health care professionals in Twin Falls, Idaho, at the time they treated Mrs. Schmechel. The Schmechels allege that this was error warranting a new trial.

This Court exercises free review over the correctness of jury instructions. *Craig Johnson Const., L.L.C.*, 142 Idaho at 800, 134 P.3d at 651. We

> [r]eview[] jury instructions to determine whether the instructions, as a whole, fairly and adequately present the issues and state the law. A requested jury instruction must be given when it is supported by any reasonable view of the evidence. An instruction is not to be given if it is an erroneous statement of the law, not supported by the facts, or adequately covered by the other instructions. Jury instructions are to be viewed as a whole in determining whether the jury was properly and adequately instructed on the applicable law.

*Vanderford Co., Inc. v. Knudson*, 144 Idaho 547, 555, 165 P.3d 261, 269 (2007) (internal citations omitted).

For the reasons discussed in Part III.A, *supra*, the doctrine of negligence per se is inapplicable in a medical malpractice action. Thus, the Schmechels' requested instruction is an erroneous statement of the law, and the district court was correct not to give it. The instruction that the district court did give properly and adequately states the requirements of I.C. §§ 6-1012

and 6-1013. Thus, the court correctly instructed the jury on the requirements for proving negligence.

In turn, the district court did not abuse its discretion in declining to grant the Schmechels' motion for a new trial on the basis of this alleged error. The court acted consistently with legal standards and exercised reason when it concluded that "[the Schmechels'] proposed instruction would have allowed the jury to find that defendants breached the standard of care by violating the IDAPA regulations, regardless of whether the Schmechels proved as much using direct expert testimony as required by [I.C. §§ 6-1012 and 6-1013]." Accordingly, we find no error in the district court's denial of the Schmechels' motion for a new trial on this ground.

2. Exclusion of the 2003 IDAPAs

In conjunction with its decision not to instruct the jury on negligence per se, the district court decided that it would not admit the 2003 IDAPAs into evidence. Instead, the court held that it would

> . . . allow counsel to use those rules in their argument as they see fit. I will not admit [the 2003 IDAPAs]. To me, it seems that this is overly burdensome upon the jury to sit back and try to make sense of legal regulations that may or may not apply as they determine the facts to this instance. Were they more clearly defined, as I sense it, I would be more inclined to consider the plaintiffs' argument; but I do not determine that they are and meet the threshold hurdle of being clearly defining [sic] a standard of conduct such that they should be given as a negligence per se, and I will not admit them, but I allow counsel full rein to use those as they did in their inquiry of witnesses [and] in closing argument, and the jury will be instructed that those are valid rules.

Specifically, the court instructed the jury as follows: "You are instructed that the court takes judicial notice of the Idaho Administrative Procedures Act, § 22.01.03 (2003), entitled 'Rules for the Licensure of Physician Assistants.' The rules were in effect in 2003." The Schmechels contend that it was error warranting a new trial for the district court to exclude the IDAPA regulations.

As stated above, an unexcused violation of the IDAPAs, though they may not appropriately define the standard of care in a medical malpractice suit, may still be relevant evidence bearing on whether Dr. Dillé and Mr. Byrne were negligent in their treatment of Mrs. Schmechel. Restatement (Second) Torts § 288B (1965). Idaho Rule of Evidence 403, however, states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of . . . confusion of the issues, or misleading the jury . . . ." "It is well

- 12 -

established that a trial court has considerable discretion to exclude evidence for reasons . . . that the evidence is confusing [or] could have been interpreted in many different ways." *Burgess*, 127 Idaho at 574, 903 P.2d at 739 (citing I.R.E. 403). The standard for deciding whether the court abused that discretion is whether the court 1) perceived the issue as discretionary, 2) acted consistently with the legal standards applicable to the choices before it and within the outer bounds of its discretion, and 3) reached its decision by an exercise of reason. *Sun Valley Shopping Center Inc.,* 119 Idaho at 94, 803 P.2d at 1000.

There is no question the court recognized that it had the discretion to admit or exclude the IDAPAs. Furthermore, it acted consistently with the legal standard set out in I.R.E. 403 and used reason when applying that standard to reach the decision to exclude the IDAPAs. The district court correctly concluded, both at trial and again in its decision denying the Schmechels' request for a new trial, that the IDAPAs do not establish the standard of care in this case and thus that their probative value was substantially outweighed by the danger of confusing the jury. Had the court admitted the regulations, the jury may have been tempted to find a violation to be negligence per se, which would have been inappropriate for the reasons discussed in Part III.A, *supra*. The district court did not abuse its discretion in excluding the IDAPAs, and, therefore, did not abuse its discretion in declining to grant a new trial on the basis of their exclusion.

Even if we were to hold that the district court erred in excluding the IDAPAs, such error would not warrant a reversal of the district court's denial of the motion for a new trial. I.R.C.P. 61. The Schmechels had an opportunity to read relevant portions of the regulations and question witnesses about them, as well as to reference the regulations and publish them to the jury via the in-court video screen during closing argument. This, coupled with the fact that the district court instructed the jury that the rules were in effect in 2003, leads us to conclude that the court's exclusion of the regulations did not affect a substantial right of the Schmechels'. *See Alexander v. Conveyors & Dumpers, Inc.*, 731 F.2d 1221, 1229 (5th Cir. 1984) (no substantial right of appellant's was affected by the failure to admit the safety code as an exhibit because the relevant sections had already been read and shown to the jury). Any error in the exclusion of the rules would have been harmless.

**C. The district court did not abuse its discretion in not granting a new trial on the basis that it did not instruct the jury on recklessness.**

The Schmechels urge that the district court erred when it decided it would only instruct the jury on recklessness when and if the jury returned a verdict with a damages award in excess

of the statutory cap on non-economic damages. The Schmechels argue that they presented testimony from Dr. Lipman that Dr. Dillé and Mr. Byrne were reckless and they were thus entitled to an instruction on recklessness in order for the jury to be able to evaluate the testimony from Dr. Lipman. The Schmechels contend that the lack of such an instruction warrants a new trial pursuant to I.R.C.P. 59(a)(1), I.R.C.P. 59(a)(3), and I.R.C.P. 59(a)(7).

As stated above, this Court exercises free review over the correctness of jury instructions. *Craig Johnson Const., L.L.C.*, 142 Idaho at 800, 134 P.3d at 651. We must determine whether the instructions as a whole fairly and adequately presented the issues and stated the law. *Vanderford Co., Inc.*, 144 Idaho at 555, 165 P.3d at 269. An instruction should not be given if it is an erroneous statement of the law. *Id.*

As recognized by the district court in considering the Schmechels' motion for a new trial, I.C. § 6-1012 requires that a medical malpractice plaintiff prove that a defendant medical provider "*negligently* failed to meet the applicable standard of health care . . . ." (Emphasis added). In this case, the jury could have applied Dr. Lipman's testimony to the issue of negligence as it was instructed on that requirement. Dr. Lipman testified that

> in the context of the legal definition . . . I have to conclude that [the treatment of Mrs. Schmechel] was reckless in that sense. . . . I don't think it was intentional harm. I don't think it was—there was any malice. I don't think there was anything that was done, as I said, intentionally. But I think it was tragic and avoidable.

If the jury had believed Dr. Lipman, it could have equated his opinion that the treatment of Mrs. Schmechel was "tragic and avoidable" with Dr. Dillé and Mr. Byrne having "failed to meet the standard of care." We are unable to conclude that the failure to instruct the jury as to recklessness deprived the jury of the opportunity to evaluate Dr. Lipman's testimony.

Further, we are unable to conclude that the absence of an instruction otherwise prejudiced the Schmechels. "Reckless" is not synonymous with "negligent." *Hall v. Farmers Alliance Mut. Ins. Co.*, 145 Idaho 313, 325, 179 P.3d 276, 288 (2008). Analogizing to criminal law, negligence is the equivalent of a "lesser-included offense" to reckless conduct. As the jury found that Dr. Dillé and Mr. Byrne were not negligent, any error in failing to instruct the jury as to recklessness was harmless. I.R.C.P. 61.

In sum, we conclude that the Schmechels have not shown that the district court abused its discretion by deciding not to instruct the jury on recklessness until it returned a damages award

in excess of the statutory cap on non-economic damages. In turn, the court did not abuse its discretion in declining to grant a new trial on this basis.

**D. Any error in the district court's refusal to grant a new trial on the basis that it did not exclude Dr. Smith's testimony regarding causation was harmless.**

The Schmechels urge that the district court should have granted a new trial pursuant to I.R.C.P. 59(a)(1), I.R.C.P. 59(a)(3), and I.R.C.P. 59(a)(7) based on the fact that it allowed Dr. Smith to testify that it was his opinion that the most likely cause of Mrs. Schmechel's death was a sudden cardiac death due to a heart rhythm disturbance. The Schmechels contend that the substance of this opinion was not timely disclosed, and that thus the district court should have excluded it.

We need not consider the issue of Dr. Smith's testimony. I.R.C.P. 61. This is because we find no error leading up to the jury's findings that Dr. Dillé and Mr. Byrne did not breach the standard of care. Thus, any error regarding causation is harmless, as the question of causation would only be relevant if the Schmechels had first proved that Dr. Dillé or Mr. Byrne had breached the applicable standard of health care practice. 57A Am. Jur. 2d Negligence § 71 ("The elements of negligence are a duty the defendant owes to the plaintiff, a breach of that duty by the defendant, a causal connection between the breach and the plaintiff's injury, and actual injury. In the absence of any one of these elements, no cause of action for negligence will lie.").

**E. We decline to award Dr. Dillé and SIPI attorney fees on appeal.**

Dr. Dillé and SIPI request attorney fees on appeal pursuant to I.C. § 12-121. The Court is authorized to award attorney fees under this statute if we are left with an abiding belief that the appeal was brought, pursued, or defended frivolously, unreasonably, or without foundation. *Burns v. Baldwin*, 138 Idaho 480, 487, 65 P.3d 502, 509 (2003) (citing *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979)). We are unable to conclude that the Schmechels' appeal was pursued unreasonably or without foundation.

## IV. CONCLUSION

The district court did not abuse its discretion in denying the Schmechels' request for a new trial. The district court did not abuse its discretion in excluding Dr. Lordon's testimony and correctly declined to instruct the jury on negligence per se. The court did not abuse its discretion by excluding the 2003 IDAPAs. The court did not abuse its discretion by failing to instruct the jury on the issue of recklessness. Further, we decline to address whether the district court erred

in allowing Dr. Smith to testify.  Finally, we decline to award Dr. Dillé and SIPI attorney fees. Costs to Respondents.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES **CONCUR**.