IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 39991

| | | |
|---|---|---|
| CRAIG L. MULFORD, an individual | ) | |
| | ) | Boise, December 2013 Term |
| Plaintiff-Appellant, | ) | |
| | ) | 2014 Opinion No. 16 |
| v. | ) | |
| | ) | Filed: February 10, 2014 |
| UNION PACIFIC RAILROAD, a foreign | ) | |
| corporation | ) | Stephen Kenyon, Clerk |
| | ) | |
| Defendant-Respondent. | ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Hon. Stephen S. Dunn, District Judge.

The judgment of the district court is affirmed.

Cooper & Larsen, Chartered, Pocatello, for appellant. Javier Luis Gabiola argued.

Union Pacific Railroad Company, Salt Lake City, Utah, for respondent. Steven T. Densley argued.

_____

HORTON, Justice.

This is an appeal from a negligence action brought pursuant to the Federal Employer's Liability Act by appellant, Craig L. Mulford. Below, a jury found that respondent, Union Pacific Railroad (UP), was not negligent and Mulford's claims against UP were dismissed. Mulford timely appealed. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 30, 2009, Mulford, a machinist employed by UP, filed a complaint against UP seeking relief under the Federal Employer's Liability Act (FELA). Mulford's complaint alleged that he sustained injury to his knees as a result of UP's negligence. On May 14, 2012, the case went to trial. On May 18, the jury reached its verdict, unanimously concluding that UP was not negligent. The district court issued its final judgment on May 22, 2012, stating, "judgment is hereby entered in this matter in favor of Defendant, [UP]. Plaintiff's claims against said Defendant are hereby dismissed." Mulford timely appealed.

In this appeal, Mulford claims that the district court erred on two separate grounds. First, Mulford takes issue with the district court's decision not to disqualify a juror for cause. Second, Mulford takes issue with the district court's decision to admit evidence that he received disability benefits from the Railroad Retirement Board[1] (RRB) to impeach statements made by Mulford on direct examination. Each issue raised is fact specific and requires citation to the trial transcript.

1. **The voir dire questioning of the juror.**

Voir dire took place on May 14, 2012. This included extensive questioning of the juror. The first pertinent line of questioning concerned the juror's "relationship" with UP, it provides:

> **The Court:** Do you have any kind of relationship with the parties such as employer/employee, debtor/creditor, attorney/client, master/servant, that kind of relationship?
>
> **[The juror]:** Yes.
>
> **The Court:** Tell me what your relationship is.
>
> **[The juror]:** My father's an employee of Union Pacific.
>
> **The Court:** Your father's an employee of the railroad. All right. And so you don't have that relationship. Your father does.
>
> **[The juror]:** Yes.
>
> **The Court:** Is there anything about that relationship that he has at the railroad that would cause you to be biased in this case or could you listen [to] the evidence and decide this case fairly?
>
> **[The juror]:** I can help decide it fairly.

The second pertinent line of questioning during the voir dire of the juror concerned his ability to award damages for emotional distress. The transcript of the questioning provides:

> **Mr. Larsen [Counsel for Mulford]:** Are there any of you who feel like if a person's [sic] been injured … that if they have pain and suffering that they should or should not get any compensation for that pain and suffering? Anyone have any problems with that concept?
> ….
>
> **[The juror]:** It's more personal opinion that I do believe that if somebody's going to be covered for lost wages, compensation, hospital bills and stuff like that, why further it for pain and suffering?
>
> **Mr. Larsen:** So in this case for an item of damage of pain and suffering could you follow the law? And if the law, in fact, supports that Mr. Mulford is entitled to money damages for pain and suffering, could you award that given your experience?

---

[1] The Railroad Retirement Board is a governmental entity that administers retirement and disability benefits that are similar to Social Security Disability payments but that are only available to railroad employees.

**[The juror]:** I don't believe so.

….

**Mr. Larsen:** All right. I'd move for excusing for cause, Your Honor.

….

**The Court:** Just a second. Let me ask a question. [I]n this particular case, the judge dictates or tells the jury what the law in Idaho is, what the duties are, what the responsibilities of the parties are to each other, and what the damages are that can be awarded if the evidence supports it. If I were to instruct you that certain items of damages are compensable and you believe that the evidence supported those items of damage, would you follow my instructions and award the damages that this the evidence would support?

**[The juror]:** Yes.

Mulford's counsel then informed the potential jurors and the district court that he had no additional questions. Thereafter, the court inquired "[a]ll right. Now, pass the jury for cause?" To which Mulford's counsel replied "[y]es, Your Honor."

## 2. Evidence of disability benefits from the RRB.

The next issue raised by Mulford deals with the district court's decision to allow evidence of a collateral source to go before the jury in order to challenge Mulford's credibility. The issue of Mulford's receipt of RRB benefits first arose during his deposition when UP's counsel asked him about his motivation for only seeking part-time employment. Mulford indicated that at least part of the reason that he was only seeking part-time work was he would lose his RRB benefits if his monthly income exceeded $780.

Prior to trial, Mulford filed a motion in limine to exclude evidence that he received RRB benefits. Mulford argued that the benefits he was receiving from the RRB constituted a collateral source and, as such, evidence of the benefits should not be admitted. The district court issued its Order on Motions in Limine on May 10, 2012, and expressly reserved its ruling on the admissibility of Mulford's RRB benefits until trial.

Mulford was the first witness to give testimony at trial. On direct examination, he testified that he sought part-time work because he wanted to find out "how [he] would be able to work or if [he] could even work." On cross-examination, UP's counsel revisited Mulford's explanation as to why he was seeking part-time employment. Over numerous objections from Mulford's counsel, Mulford eventually testified that one of the reasons he was seeking part-time employment was the prospect of losing his RRB benefits.

3

After a short redirect, Mulford's counsel asked that the jury be excused. Mulford's counsel then argued that the introduction of evidence of Mulford's receipt of RRB benefits was more prejudicial then probative. The district judge responded that Mulford's testimony had "opened the door" to the introduction of the evidence relating to RRB benefits. Mulford then moved for a mistrial. The court denied the motion because Mulford had opened the door to the admission of the RRB benefits evidence. However, the district court held that Mulford's statement that he would lose his benefits if he earned more than $780 was beyond the scope of the question, and was not responsive. Accordingly, the district court offered to strike that specific statement and/or give a cautionary instruction to the jury. Mulford declined the court's offer.

## II. STANDARD OF REVIEW

> It is in the trial court's discretion to determine whether a juror can render a fair and impartial verdict. On appeal, we review the trial court's selection of jurors for an abuse of discretion. In ruling on a challenge for cause, the trial court must consider the facts and decide if the juror should be excused pursuant to I.R.C.P. 47(h), which sets forth the grounds for challenges for cause.

*Morris ex rel. Morris v. Thomson*, 130 Idaho 138, 141, 937 P.2d 1212, 1215 (1997) (citations omitted). Similarly, "[d]ecisions regarding the admission of evidence are reversed only upon a showing of an abuse of discretion." *City of McCall v. Seubert*, 142 Idaho 580, 587, 130 P.3d 1118, 1125 (2006) (quoting *Van Brunt v. Stoddard*, 136 Idaho 681, 686, 39 P.3d 621, 626 (2001)). "This Court's test to determine whether a trial court has abused its discretion consists of three parts: '(1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason.' " *Goodspeed v. Shippen*, 154 Idaho 866, 869–70, 303 P.3d 225, 228–29 (2013) (quoting *Schmechel v. Dillé*, 148 Idaho 176, 179, 219 P.3d 1192, 1195 (2009)).

## III. ANALYSIS

**A. Mulford waived his right to argue that the district court abused its discretion in failing to disqualify the juror for cause.**

During voir dire the juror stated, "I don't believe that pain and suffering should be entered for compensation." Based on the juror's initial unwillingness to award damages for pain and suffering, Mulford moved to excuse the juror for cause. After Mulford's motion, the district court rehabilitated the juror and did not excuse him due to his assurance that he could follow the court's instructions on damages. Mulford's counsel did not renew his motion to excuse the juror

4

after the district court's questioning and Mulford's counsel passed the jury panel for cause at the conclusion of voir dire.

On appeal, Mulford argues that the district court abused its discretion in failing to disqualify the juror for cause. Mulford argues that the juror should have been disqualified for both actual and implied bias. Mulford's implied bias argument relies on I.R.C.P. 47(h)(2),[2] which allows a challenge for cause to be made where there is consanguinity or affinity within the fourth degree between a potential juror and a party. Mulford argues that the juror had such a relationship with UP because the juror's father was employed by UP.

Mulford's actual bias argument relies on I.R.C.P. 47(h)(7), which allows a challenge for cause to be made where a juror has a state of mind "evincing enmity or bias to or against either party." Mulford contends that the juror's personal convictions relating to the award of damages for pain and suffering constitute bias meriting disqualification.

In response, UP argues that Mulford has waived any argument on appeal that the juror should have been disqualified for cause because Mulford passed the jury panel for cause at the conclusion of voir dire without renewing his objection to the juror serving. We agree with UP and find that Mulford has waived his ability to assert on appeal that the district court abused its discretion by failing to strike the juror for cause.

Where a party fails to challenge a juror for cause during voir dire and ultimately passes the jury panel for cause, that party waives any objection to those jurors on appeal because the issue has not been properly preserved. *Morris*, 130 Idaho at 141, 937 P.2d at 1215. This is because "[a]ny objection to the trial court's refusal to a remove a prospective juror for cause is waived when [a litigant] does not renew his challenge for cause prior to passing the jury." 50A C.J.S. Juries § 354. Passing a jury for cause at the conclusion of voir dire "indicates [] satisfaction with the jury as finally constituted." *State v. Bitz*, 93 Idaho 239, 243, 460 P.2d 374, 378 (1969).

---

[2] Mulford also asserts that I.C. §§ 19-2019 and 19-2020(1) support his claim of error. He is mistaken. These statutes, found in Title 19 of the Idaho Code, relate to criminal procedure. As this is a civil action, they do not apply to this case.

In this case, Mulford has waived the right to argue on appeal that the juror should not have served as a juror by passing him for cause at the conclusion of voir dire without renewing his objection to the juror's service.[3]

**B. The district court did not abuse its discretion in admitting evidence that Mulford was receiving RRB benefits for the purpose of impeachment.**

At his deposition, Mulford spoke to his motivation for seeking part-time work. He indicated that he was seeking part-time work because it would allow him to supplement his RRB benefits income and that if he earned more than a certain sum he would stop receiving benefits. Prior to trial, Mulford moved the court in limine to exclude all evidence that he was receiving RRB benefits. The court reserved its ruling on the motion until trial. While testifying on direct examination, Mulford stated: "I've looked for a lot of part-time work, because I would like to get into finding out how I would be able to work or if I could even work."

On cross-examination, UP's counsel revisited Mulford's explanation as to why he was seeking part-time employment. Over numerous objections from Mulford's counsel, Mulford eventually was asked:

> **[Mr. Densley Counsel for UP]:** Mr. Mulford, it's not the only reason is it? It's not just because you want to see if you're physically able to do the job. There's another reason that you're only applying for part-time work isn't there?
>
> **[Mulford]:** Yes.
>
> **[Mr. Densley Counsel for UP]:** What is that?
>
> **[Mulford]:** Because I'm limited to only so much amount of money to make.
>
> ….
>
> **The Court:** The pending question is: So there's a limit of the amount of money that you can make or what happens? That's the question that's pending. You can answer that question.
>
> **[Mulford]:** Yes. I can make $780 a month, and if I make any over that I lose my retirement.

The district court allowed this line of questioning because Mulford testified on direct about his motivations for seeking part-time employment, opening the door. The district judge stated:

---

[3] We note the absence of legal merit to Mulford's claim of implied bias. "Consanguinity" is "[k]inship, blood relationship; the connection or relation of persons descended from the same stock or common ancestor. Consanguinity is distinguished from 'affinity,' which is the connection existing in consequence of a marriage, between each of the married persons and the kindred of the other." Black's Law Dictionary 275 (5th ed. 1979). Although corporations may have certain rights, *see, e.g., Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) (free speech), they are unable to procreate or enter into marital unions.

My view is that the testimony of the plaintiff as it went to the reasons for -- the reasons that he was not seeking anything more than part-time work goes to his credibility. Because he offered an explanation, but it wasn't the full explanation. And because I felt that he'd opened the door on that I allowed the defendant to inquire are there any other reasons and he offered the testimony that he did …. But in terms of substantive testimony, I felt like his answer particularly as it mentioned specific amounts were beyond the scope of the question, were not responsive. I offered to the plaintiffs to strike that or give a cautionary instruction. [Plaintiff] declined that for fear that it would further taint the jury to add emphasis to it.

Mulford argues that the district court committed reversible error in allowing evidence of his receipt of RRB benefits, a collateral source, to go to the jury. Mulford contends that collateral source evidence, such as his RRB benefits, are inadmissible pursuant to I.C. § 6-1606[4] and *Eichel v. New York Cent. R.R. Co.*, 375 U.S. 253 (1963), which Mulford argues makes evidence of RRB benefits per se inadmissible. Additionally, Mulford contends that evidence of his receipt of RRB benefits was inadmissible under I.R.E 403 because it was more prejudicial that probative.

UP asserts that the district court did not abuse its discretion and properly admitted evidence of Mulford's receipt of RRB benefits. UP argues that the district court did not abuse its discretion because it reached its ruling by an exercise of reason consistent with applicable legal standards because Mulford opened the door to his receipt of RRB benefits by giving a misleading answer on direct examination.

"The standard of review of a trial court's decision regarding the admission of evidence in rebuttal is one of deference to the trial court. Decisions regarding the admission of evidence are reversed only upon a showing of an abuse of discretion." *City of McCall*, 142 Idaho at 586–87, 130 P.3d at 1124–25 (quoting *Van Brunt v. Stoddard*, 136 Idaho 681, 686, 39 P.3d 621, 626 (2001)). "Error may not be predicated upon a ruling which admits or excludes evidence unless the ruling is a manifest abuse of the trial court's discretion and a substantial right of the party is affected." *Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 17, 278 P.3d 415, 419 (2012) (quoting

---

[4] Idaho Code § 6-1606 is not applicable in this case because it governs post-judgment set-offs of collateral source benefits and because the issue of damages in this FELA case is governed by federal law. Idaho Code § 6-1606 provides:

> In any action for personal injury or property damage, a judgment may be entered for the claimant only for damages which exceed amounts received by the claimant from collateral sources as compensation for the personal injury or property damage …. Evidence of payment by collateral sources is admissible to the court after the finder of fact has rendered an award. Such award shall be reduced by the court to the extent the award includes compensation for damages which have been compensated independently from collateral sources.

*Burgess v. Salmon River Canal Co., Ltd.*, 127 Idaho 565, 574, 903 P.2d 730, 739 (1995)). Appellants must present argument and authority, in their opening brief, that a substantial right has been affected by the improper admission. *Bolognese v. Forte*, 153 Idaho 857, 866, 292 P.3d 248, 257 (2012) (citing *Hurtado*, 153 Idaho at 18, 278 P.3d at 420). If either argument or authority is lacking in the parties opening brief, the claim of error is waived. *Hurtado*, 153 Idaho at 17, 278 P.3d at 419. "This Court's test to determine whether a trial court has abused its discretion consists of three parts: '(1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason.'" *Goodspeed v. Shippen*, 154 Idaho 866, 869–70, 303 P.3d 225, 228–29 (2013) (quoting *Schmechel v. Dillé*, 148 Idaho 176, 179, 219 P.3d 1192, 1195 (2009)).

Applying our three part test to the facts of this case reveals that the district court did not abuse its discretion in admitting evidence of Mulford's receipt of RRB benefits. First, the district court recognized its decision to admit evidence of Mulford's receipt of RRB benefits was discretionary. This is clear from the court's pre-trial rulings on the parties' motions in limine and from the trial transcript, which provides a clear record that the district court viewed the admission as discretionary.

Second, the district court acted consistently with the applicable legal standards. Under the "collateral source rule," where "an injured party receives compensation for their injuries from a source independent of the tortfeasor, the payment should not be deducted from the damages that the tortfeasor must pay." *See* BLACK'S LAW DICTIONARY 299 (9th ed. 2009). The collateral source rule has been treated as both a rule of evidence and a substantive rule of law. Victor E. Schwartz & Cary Silverman, *Toppling the House of Cards That Flowed from an Unsound Supreme Court Decision: End Inadmissibility of Railroad Disability Benefits in FELA Cases*, 30 TRANSP. L.J. 105, 106 (2003). Payments received from collateral sources are generally inadmissible unless the evidence of payment from a collateral source is relevant to some other material issue. 22 Am. Jur. 2d Damages § 779. For instance, "when a plaintiff, through either the use of misleading statements or outright false statements, falsely conveys to the jury that the plaintiff is destitute or in dire financial straits, admission of evidence of collateral source payments received by the plaintiff is permitted" as impeachment evidence. *Id*.

"Impeaching evidence is that which is directed to the credibility of a witness." *Van Brunt*, 136 Idaho at 685, 39 P.3d at 625. "[W]henever evidence is introduced for purposes of impeachment, it necessarily involves a witness' credibility, and credibility is always relevant." *State v. Hairston*, 133 Idaho 496, 503, 988 P.2d 1170, 1177 (1999) (quoting *State v. Arledge*, 119 Idaho 584, 588, 808 P.2d 1329, 1333 (Ct. App. 1991)). "All relevant evidence is admissible except as otherwise provided." I.R.E. 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." I.R.E. 403. Idaho Rule of Evidence 403 creates a balancing test:

> On one hand, the trial judge must measure the probative worth of the proffered evidence. The trial judge, in determining probative worth, focuses upon the degree of relevance and materiality of the evidence and the need for it on the issue on which it is to be introduced. At the other end of the equation, the trial judge must consider whether the evidence amounts to unfair prejudice. Here, the concern is whether the evidence will be given undue weight, or where its use results in an inequity.

*Davidson v. Beco Corp.*, 114 Idaho 107, 110, 753 P.2d 1253, 1256 (1987) (citations omitted). The Idaho Rules of Evidence "govern all actions, cases and proceedings in the courts of the State of Idaho." I.R.E. 101(b).

In this case, the district court allowed Mulford to be questioned about his receipt of RRB benefits, a collateral source, to test the credibility of his statement that he was seeking part-time employment "because [he] would like to get into finding out how [he] would be able to work or if [he] could even work." The district court held that Mulford opened the door to this line of questioning because he offered an explanation of why he was seeking part-time employment, but it wasn't the full explanation. As evidence going to Mulford's credibility, the RRB benefits were relevant. Additionally, the probative value of the evidence was not substantially outweighed by its prejudicial effect. The evidence was very probative as to credibility. It clearly called into question the veracity of Mulford's testimony as to why he was only seeking part-time employment.

The prejudicial effect of the admission in this case was slight. Mulford himself opened the door to this testimony by providing misleading testimony on direct examination. Additionally, the district court offered to give a cautionary instruction to the jury that it was not to use the evidence substantively in order to limit any prejudicial effect of the evidence. However, Mulford denied the offered cautionary instruction. Furthermore, there was no

9

alternative evidence, less prejudicial, that UP could have offered with which to impeach Mulford's misstatement. Accordingly, the record indicates that the probative value of the district court's admission was not substantially outweighed by its prejudicial effect.

Lastly, the district court reached it decision to admit evidence of Mulford's RRB benefits though an exercise of reason. The trial transcript provides that the district court properly weighed the probative value of the evidence versus its prejudicial effect and ultimately determined that Mulford had opened the door to the evidence and that it needed to be admitted to correct Mulford's misstatements. The district court recognized that generally collateral source evidence is not admissible, but concluded that Mulford's RRB benefits were admissible in this case as impeachment evidence only, not as substantive evidence of liability. Accordingly, we find that the district court did not abuse its discretion in admitting evidence of Mulford's RRB benefits for the purpose of calling the credibility of Mulford's testimony into question.

## C.  UP has not waived its right to an award of court costs on appeal.

On appeal, Mulford argues that UP has waived its right to fees and costs on appeal by failing to request fees and/or costs in its opening brief. At no point has UP argued that this Court should award it attorney fees on appeal. However, at oral argument UP asserted that the Court should award it costs in this matter regardless of whether UP's opening brief failed to raise the issue because costs, on appeal, are awarded as a matter of right.

"[I]n order to be entitled to attorney fees on appeal, authority and argument establishing a right to fees must be presented in the first brief filed by a party with this Court. A citation to statutes and rules authorizing fees, without more, is insufficient." *Carroll v. MBNA America Bank*, 148 Idaho 261, 270, 220 P.3d 1080, 1089 (2009) (citations omitted). Unlike attorney fees, which require briefing and citation, "costs shall be allowed as a matter of right to the prevailing party or parties, unless otherwise ordered by the court." I.R.C.P. 54(d)(1)(A). Because costs are awarded as a matter of right a party need not raise the issue in their opening brief on appeal or provide the Court with citation and authority authorizing costs in order to be awarded costs on appeal.

In this case, UP makes no argument that it is entitled to attorney fees on appeal; thus, it is irrelevant whether they waived their right to attorney fees by not briefing the issue. Furthermore, Mulford's argument that UP has waived its right to costs on appeal is without merit because the law in Idaho does not require parties to specifically request an award for costs. This is because

court costs are awarded as a matter of right to the prevailing party or parties. Accordingly, UP has not waived its right to costs on appeal.

**D. Mulford is not entitled to attorney fees on appeal.**

On appeal, Mulford seeks attorney fees pursuant to I.C. § 12-121. "Attorney fees are awarded to the prevailing party only if 'the Court determines that the action was brought or pursued frivolously, unreasonably or without foundation.'" *Youngblood v. Higbee*, 145 Idaho 665, 669, 182 P.3d 1199, 1203 (2008) (quoting *Baker v. Sullivan*, 132 Idaho 746, 751, 979 P.2d 619, 624 (1999)). Here, Mulford is not entitled to attorney fees pursuant to I.C. § 12-121 because Mulford is not the prevailing party in this appeal.

## IV. CONCLUSION

We uphold the jury's verdict finding that UP was not negligent and award costs as a matter of right to UP.


Chief Justice BURDICK, Justices EISMANN, J. JONES and Justice Pro Tem SCHROEDER, **CONCUR**.

11