141 P.3d 1099

Virgil **HORNER** and Julie Horner, individually and on behalf of their natural daughter, Hanna Alena Horner, a minor child, Plaintiffs–Respondents,

v.

**SANI–TOP, INC.,** Defendant–Appellant.

No. 31588.

Supreme Court of Idaho,
Boise, March 2006 Term.

Aug. 8, 2006.

Rehearing Denied Aug. 15, 2006,

Bowen & Bailey, L.L.P., Boise, for appellant. Chris Kronberg argued.

Seiniger Law Offices, P.A., Boise, for respondents. W. Breck Seiniger Jr. argued.

## SUBSTITUTE OPINION

### THE COURT'S PRIOR OPINION DATED JUNE 5, 2006, IS HEREBY WITHDRAWN

TROUT, Justice.

This is a wrongful death case arising out of an accident that occurred in the Home Depot Store in Twin Falls, Idaho (Home Depot). Janessa Horner, who was two years old at the time, died after being struck by debris from a load of countertops which fell as a Home Depot employee removed them from a high shelf using a forklift. Defendant Sani–Top, Inc. (Sani–Top), the company that manufactured and packaged the countertops for shipment to Home Depot, appeals from a district court decision denying its post-trial motions to alter or amend the judgment and for a judgment notwithstanding the verdict.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

After the accident, Janessa's parents Virgil Horner and Julie Horner–Cunningham (Virgil, Julie, or collectively the Horners) began

negotiations with both Home Depot and Sani–Top. Initially, Home Depot voluntarily paid the Horners for Janessa's medical and funeral expenses incurred as a result of the accident. Ultimately, the Horners entered into a Settlement Agreement with Home Depot and fully released Home Depot from any further responsibility. Thereafter, the Horners, individually and on behalf of Janessa's sister, Hanna, filed a wrongful death action against Sani–Top, alleging Sani–Top had negligently designed and/or manufactured its packaging system for the countertops.

After a seven-day trial, the jury awarded over $4 million dollars to the Horner family, primarily relating to noneconomic damages. On the verdict form, the jury was instructed to apportion liability, if any, to Home Depot as well as Sani–Top. The jury assigned 87% of the fault to Home Depot and 13% of the fault to Sani–Top. Based upon the percentage of fault assigned by the jury, the district judge multiplied each plaintiff's total award by 13% and then entered separate judgments against Sani–Top for Virgil, Julie and Hanna Horner. As a result, Virgil and Julie were awarded $221,000 each (representing $26,000 in economic damages and $195,000 in noneconomic damages) and $130,000 for their daughter Hanna.

After entry of judgment, Sani–Top filed post-trials motions to alter or amend the judgment pursuant to Idaho Rules of Civil Procedure 59(e) and for a JNOV under I.R.C.P. 50(b). Sani–Top raised issues concerning whether the judge properly calculated the judgment, whether the judgment should be offset by money Home Depot paid to settle the case and whether there was sufficient evidence to support some of the jury's damage awards and/or the overall verdict. In a lengthy and well-reasoned opinion, the district judge analyzed each of the arguments Sani–Top raised and denied both the motion to alter or amend the judgment and the JNOV. Sani–Top now appeals from those rulings.

## II.

### STANDARD OF REVIEW

■ "The determination of the meaning of a statute and its application is a matter of law over which this [C]ourt exercises free review." *Woodburn v. Manco Prods., Inc.*, 137 Idaho 502, 504, 50 P.3d 997, 999 (2002). "Where the language of the statute is clear and unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature." *State v. Hart*, 135 Idaho 827, 829, 25 P.3d 850, 852 (2001).

■ When considering an appeal from a district court's ruling on a motion to alter or amend the judgment under I.R.C.P. 59(e), this Court applies the abuse of discretion standard. *Slaathaug v. Allstate Ins. Co.*, 132 Idaho 705, 707, 979 P.2d 107, 109 (1999). In reviewing an exercise of discretion, the appellate court must consider (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

■ The standard of review of a grant or denial of a motion for JNOV is the same as that of the trial court when ruling on the motion. *Quick v. Crane*, 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986). A jury verdict must be upheld if there is evidence of sufficient quantity and probative value that reasonable minds could have reached a similar conclusion to that of the jury. *Hudson v. Cobbs*, 118 Idaho 474, 478, 797 P.2d 1322, 1326 (1990). In reviewing a grant or denial of a motion for JNOV the Court may not reweigh evidence, consider witness credibility, or compare its factual findings with that of the jury. *Griff, Inc. v. Curry Bean Co., Inc.*, 138 Idaho 315, 319, 63 P.3d 441, 445 (2003). This Court reviews the facts as if the moving party had admitted any adverse facts, drawing reasonable inferences in favor of the non-moving party. *Ricketts v. E. Idaho Equipment, Co., Inc.*, 137 Idaho 578, 580, 51 P.3d 392, 394 (2002).

## III.

## ANALYSIS

### A. Motion to Alter or Amend the Judgment

Sani–Top argues the district judge abused his discretion in denying its motion to alter or amend the judgment, alleging the following: (1) in calculating the judgment, the district judge incorrectly applied the statutory cap on noneconomic damages set forth in Idaho Code § 6–1603; (2) Sani–Top is entitled to a credit against the judgment for the proceeds of the settlement with Home Depot and for the out-of-pocket payments Home Depot made for Janessa's medical and funeral expenses; (3) there was insufficient evidence to support the award for economic damages; and (4) there was insufficient evidence to support the award to Virgil for emotional distress.

### 1. Statutory cap on noneconomic damages

■ At the time the cause of action arose, I.C. § 6–1603 read, in pertinent part, as follows:

(1) In no action seeking damages for personal injury, including death, shall a *judgment* for noneconomic damages be entered for *a claimant* exceeding the maximum amount of four hundred thousand dollars ($400,000) [and providing for adjustments based on industrial commission adjustments to the average annual wage]....

(2) The limitation contained in this section applies to the sum of: (a) noneconomic damages sustained by a claimant who incurred personal injury or who is asserting wrongful death; (b) noneconomic damages sustained by a claimant, regardless of the number of persons responsible for the

damages or the number of actions filed....

I.C. § 6–1603 (2000) (emphasis added).[1]

In this case, the district judge correctly treated this as he would any other jury verdict, initially applying comparative fault to the total damage award for each plaintiff and then multiplying each damage award by the 13% of fault attributable to Sani–Top. Then, in preparing to enter judgment against Sani–Top, he considered I.C. § 6–1603, which provides that no judgment shall be entered for a claimant exceeding the statutory cap. Since not one of the plaintiff's damage awards for noneconomic damages exceeded the statutory cap, the judge appropriately entered judgment in compliance with I.C. § 6–1603.[2]

Sani–Top argues the language in the statute applying the limitation "regardless of the number of persons responsible for the damages or the number of actions filed" means that *any* responsible person, even if not a party to the lawsuit, must be taken into consideration when apportioning the cap. The only way to do this, Sani–Top argues, is to first apply the statutory cap to the noneconomic damage award for each plaintiff and *then* apply comparative fault, requiring the defendant(s) who proceeded to trial to pay their share of the cap as allocated by the jury.

I.C. § 6–1603 specifically contemplates the amount of damages awarded in a lawsuit, as its *only* limitation is that a "judgment" for noneconomic damages cannot be entered for a plaintiff that exceeds the amount of the statutory cap. I.C. § 6–1603 provides no indication, as Sani–Top suggests, that the legislature was concerned with out-of-court settlements or that these should be taken into consideration when applying the cap. The language "regardless of the number of persons responsible for the damages or the number of actions filed" found in I.C. § 6–1603(2) simply means that regardless of how

---

1. The current version of I.C. § 6–1603 allows a maximum award of $250,000 plus adjustments based on average annual wage, replacing the $400,000 maximum provided for in the 2002 version. In this case, after making adjustments, the district judge calculated the statutory cap to be $691,262.14, and that calculation is not at issue.

2. While the district judge combined economic and noneconomic damages before multiplying the total award by 13%, as a practical matter, this made no difference because the total amount awarded to each plaintiff did not exceed the statutory cap.

many defendants are listed on the verdict form or how many actions the plaintiff brings to collect damages, ultimately, a judgment cannot be entered in favor of "a claimant" that exceeds the amount of the statutory cap. After properly apportioning liability as found by the jury *at trial,* a court must then determine whether the total noneconomic damage award for a particular plaintiff exceeds the cap. If so, the court should further reduce each defendant's responsibility on a proportional basis, based upon the jury's allocation of fault so the plaintiff's total judgment does not exceed the cap.

Here, the district judge properly entered judgment against Sani–Top in favor of these three claimants.

### 2. Offset of Judgment

■ Sani–Top argues that its judgment should be offset by the amount Home Depot paid in its Settlement Agreement. I.C. § 6–805 governs the effect of the release of one tortfeasor on the liability of other tortfeasors. Under the statute, the effect of a tortfeasor's release on other tortfeasors depends on whether there is joint and several liability. I.C. § 6–805(1) applies to "a release by an injured person of one (1) joint tortfeasor," i.e., there is joint and several liability, and allows the reduction of the claim against other tortfeasors for the amount of the settlement. I.C. § 6–805(2), on the other hand, applies to "a release by the injured person of one (1) or more tortfeasors who are not jointly and severally liable to the injured person" and only allows a reduction when the release so provides. On appeal, Sani–Top argues that I.C. § 6–805(1) should apply because Home Depot and Sani–Top are "jointly and severally liable." We disagree.

Regarding joint and several liability, I.C. § 6–803(3) states, in pertinent part: "The common law doctrine of joint and several liability is hereby limited to causes of action listed in subsection (5) of this section...." Idaho Code § 6–803(5) states:

(5) A party shall be jointly and severally liable for the fault of another person or entity or for payment of the proportionate share of another party where they were acting in concert or when a person was acting as an agent or servant of another party. As used in this section, "acting in concert" means pursuing a common plan or design which results in the commission of an intentional or reckless tortious act.

Home Depot and Sani–Top were plainly not "acting in concert" with one another and neither acted "as an agent or servant" for the other. Therefore, since I.C. § 6–803(3) limits joint and several liability to "causes of action listed in subsection (5)," Home Depot and Sani–Top are not jointly and severally liable for the damage award.

Therefore, subsection two (2) of I.C. § 6–805 governs the effect of Home Depot's settlement release on the judgment against Sani–Top.

Idaho Code § 6–805(2) states:

(2) A release by the injured person of one (1) or more tortfeasors who are not jointly and severally liable to the injured person, whether before or after judgment, does not discharge another tortfeasor or reduce the claim against another tortfeasor *unless the release so provides* and the negligence or comparative responsibility of the tortfeasor receiving the release is presented to and considered by the finder of fact, whether or not the finder of fact apportions responsibility to the tortfeasor receiving the release.

(emphasis added).

Home Depot's Settlement Agreement simply protects Home Depot against any claim for contribution or indemnity by other tortfeasors, but in no way discharges or reduces the claim against any other tortfeasors. The district court correctly concluded the judgment against Sani–Top should not be offset by the amount of money Home Depot paid to the Horners in its Settlement Agreement.

■ Next, Sani–Top argues that under I.C. § 6–1606 the judgment against Sani–Top for economic damages should be reduced by the amount of out-of-pocket expenses Home Depot paid, apart from the actual written Settlement Agreement, for Janessa's medical and funeral expenses. I.C. § 6–1606 prohibits double recoveries from collateral sources, stating, in part, a judgment "shall be reduced by the court to the extent the award includes compensation for damages which have been compensated independently from collateral

sources." In *Tuttle v. Wayment Farms*, this Court held, consistent with I.C. § 6–805(2), that settlements are not "collateral sources" under I.C. § 6–1606. 131 Idaho 105, 952 P.2d 1241 (1998). Here, the district judge, relying on this Court's holding in *Tuttle*, concluded the payments for medical and funeral expenses were simply part of Home Depot's settlement and, therefore, the judgment against Sani–Top should not be offset by the amount of these payments. Clearly the payment of those expenses by Home Depot was in contemplation of its potential liability to the Horners and was not purely a voluntary act, nor an act required by some other contract or law. Thus, we agree with the district court that these payments were ultimately part of the overall settlement provisions between Home Depot and the Horners, which did not provide for an offset of Sani–Top's judgment. The district judge did not abuse his discretion in denying an offset of Sani–Top's judgment for money Home Depot paid to settle the case.

### 3. Sufficiency of evidence to support economic damage award

■ Sani–Top argues there was insufficient evidence to support the award for economic damages to Virgil and Julie, which would be incurred by the Horners as a result of the loss of Janessa's financial support.

The jury instructions defined economic damages to include:

3. The plaintiffs' loss of financial support from the decedent, and the present cash value of financial support the decedent would have provided to the plaintiffs in the future, but for the decedent's death, taking into account the plaintiffs' life expectancy, the decedent's age and normal life expectancy, the decedent's earning capacity, habits, disposition and any other circumstances *shown by the evidence*.[3]

No direct factual evidence or expert testimony was presented to establish Janessa's potential earning capacity or the cash value of financial support she might have provided

her parents in the future. And although Dr. Katz, a licensed psychologist specializing in grief and loss, discussed the loss of Janessa caring for and training Hanna, caring for her parents when sick, assisting in transportation and errands and the loss of assistance in taking care of her grandparents, these losses were spoken of in generalities and a review of the record reveals no evidence of any calculation of out-of-pocket expenses tied to these services.

Relying on the following quote in *Gardner v. Hobbs*, the district judge upheld the economic damage award, concluding "the surviving plaintiffs need not prove the precise amount of loss [for special damages], which is presumed from the death itself:"

It is not necessary, in this state, for a husband or wife, in order to recover for the death of the other, caused by wrongful act or negligence, to plead or prove damages arising from loss of services, food, clothing, shelter or anything else which may be measured in dollars and cents. The same rule applies in cases where a parent sues for the death of a child or the child for the death of a parent. *Pecuniary loss*, in cases of this kind, will *be presumed upon proof of death*, caused by the wrongful act or negligence of the defendant, and the relationship of husband and wife, or parent and child, existing between the plaintiff and the deceased.

69 Idaho 288, 294, 206 P.2d 539, 543 (1949) (quoting *Hepp v. Ader*, 64 Idaho 240, 245–46, 130 P.2d 859, 862 (1942) (emphasis added)).

The Gardner Court's discussion of the *Hepp* case immediately preceding this quote clarifies that *Hepp* was dealing only with *general* damages:

In *Hepp v. Ader*, a husband and daughter brought an action for the wrongful death of the wife and mother. The wife had been an invalid for 25 years and it was apparent that the husband suffered no financial loss by reason of her death. The court affirmed a judgment in favor of the

---

3. This is consistent with I.C. § 6–1601(3), which defines economic damages as follows:

(3) "Economic damages" mean *objectively verifiable* monetary loss, including but not limited to out-of-pocket expenses, loss of earnings, loss

of use of property, cost of replacement or repair, cost of obtaining substitute domestic services, loss of employment, medical expenses, or loss of business or employment opportunities. (emphasis added).

husband based solely upon deprivation of 'companionship,' 'society,' 'comfort,' 'love' and 'affection' of the deceased.

*Gardner,* 69 Idaho at 294, 206 P.2d at 543.

In Gardner, this Court reviewed earlier cases and noted that Idaho had departed from the rule in California, which required that recovery, including loss of society and companionship, be limited to "pecuniary injury, that is, an injury directly causing financial loss." *Supra* at 294, 206 P.2d at 543. The Gardner Court then referred to *Kelly v. Lemhi Irr. & Orchard Co., Ltd.,* 30 Idaho 778, 168 P. 1076 (1917), and noted this Court has approved recovery for loss of society and companionship—an injury for which there was no specific measure of financial loss. Thus, the significance of the quote from *Hepp* above is that damages may be recovered in a wrongful death case, even though they are not tied to a financial or "pecuniary loss"—such a loss is presumed with respect to loss of society or companionship. It does not mean that if a plaintiff seeks special, or out-of-pocket, damages, there is no need to prove them with any specificity or tie them to a particular loss.

 To reiterate, the *Hepp* language relied on in Gardner means that a plaintiff may recover for general damages in a wrongful death action without pleading or proving special damages. In addition, general damages, such as loss of society and companionship, will be presumed upon death when the plaintiff is the spouse, parent or child of the decedent. While the language is admittedly not very precise, there is nothing in the *Hepp* line of cases that supports the district court's conclusion that a plaintiff does not need to prove *special* damages if that type of relief is requested. In fact, in each of the cases cited by *Hepp* where the sufficiency of the evidence to support special damages was challenged, this Court responded by identifying the evidence that could be used to support the award for special damages. *See Butler v. Townend,* 50 Idaho 542, 298 P. 375 (1931) (evidence showed daughter had contributed $5 a week to her parents); *Wyland v. Twin Falls Canal Co.,* 48 Idaho 789, 285 P. 676 (1930) (evidence of obligation to pay medical and funeral expenses); *Willi v. Schaefer Hitchcock Co.,* 53 Idaho 367, 25 P.2d 167 (1933) (evidence of decedent's earnings).

 These early cases are consistent with more recent case law, which holds that in order for an award of special damages to be upheld, the plaintiff must put on some type of proof to support the damage award. "[C]ompensatory awards based on speculation and conjecture will not be allowed." *Moeller v. Harshbarger,* 118 Idaho 92, 93, 794 P.2d 1148, 1149 (1990). "More recent cases before this Court have mandated when considering an award of damages for future losses, the question is whether the plaintiff has proven the damages with reasonable certainty." *Smith v. Mitton,* 140 Idaho 893, 104 P.3d 367 (2004) (internal citations omitted). In *Mitton,* this Court held that an award of lost wages was not based on hypothetical or speculative proof, but rather on substantial and competent evidence when "[e]vidence was submitted to the jury regarding what [Smith's] wages had been, what they were subsequent to the termination, and what they had become. Some *hard numbers* were given to the jury, some *reasonable assumptions were also proposed.*" *Id.* at 900, 104 P.3d 367, P.3d at 374 (emphasis added). The attorney presented a formula as to how to calculate future losses. *Id.*

 In this case, the jury must have *some* guidance in determining what it will cost the Horners to replace the loss of services referenced by Dr. Katz, for example, the loss of Janessa caring for her sister, parents and grandparents. Because there is no evidence in the record to support economic damages as they relate to the loss of Janessa's financial support, the district judge abused his discretion in denying Sani–Top's motion to alter or amend the judgment to eliminate the economic damages award. The applicable legal standard is that damages must be proved with reasonable certainty and cannot be based on mere speculation.

### 4. Sufficiency of evidence for emotional distress damages

 Sani–Top contends the district judge abused his discretion by denying its motion to alter or amend the judgment to reduce the emotional damages award to Virgil, arguing there is insufficient evidence to support the award. The district judge was in the best

238

position to determine credibility and weigh the evidence. He presented a thorough analysis as to why the jury's verdict for Virgil was supported by substantial and competent evidence. In his decision he recounted the evidence of Virgil's physical manifestations of emotional distress, the testimony of a grief psychologist regarding the devastation that occurs when a parent loses a child and Virgil's testimony about his mental pain and suffering over the loss of his daughter and the horrifying experience of being present during the accident. Based on the substantial and competent evidence regarding Virgil's emotional distress, the district judge did not abuse his discretion in denying Sani–Top's motion to alter or amend the judgment with respect to Virgil's emotional distress damages.

**B. JNOV**

Sani–Top argues the district judge erred in denying its motion for a JNOV because (1) there was insufficient evidence to support the award to Virgil for emotional distress; (2) there was insufficient evidence to support the award for economic damages; and (3) there was insufficient evidence to support the verdict on liability. With respect to the jury's award to Virgil for emotional distress and the sufficiency of the evidence supporting the economic damage award, these issues were appropriately addressed in our discussion of Sani–Top's motion to alter or amend the complaint. Under the standard of review for a JNOV, nothing changes our previous analysis and conclusions.

The real issue under the JNOV is whether, giving deference to the district court and drawing all inferences in favor of the jury's verdict, there is substantial and competent evidence to support the verdict. Sani–Top claims it cannot be liable because the evidence is clear that Home Depot altered the packaging of the countertops, shrink wrapping loose countertops from one order on top of a separate order.

In this case, there are several areas of evidence where, if construed in a light most favorable to the Horners, a jury could reasonably conclude that Sani–Top was negligent. The jury heard evidence from a Home Depot employee that Home Depot did not alter Sani–Top's packaging of the counter-tops, that the load of countertops was too high to be stable and that Sani–Top failed to follow national standards with respect to packaging, inspection and testing of its products. When ruling on the JNOV, the district court noted: "In this case, the jury heard from witnesses from both parties who presented plausible explanations on how the debris might have come to contain pieces of countertops derived from two separate orders." Clearly, there is substantial and competent, albeit conflicting, evidence to support the conclusion that Home Depot did not alter the packaging and that Sani–Top was negligent. The district judge did not err in denying Sani–Top's motion for a JNOV with respect to the overall verdict.

**C. Attorney fees**

The Horners request attorney fees pursuant to I.C. § 12–121, alleging it was unreasonable for Sani–Top to argue there was insufficient evidence to support the jury's damage awards. Because we find this appeal was neither frivolous nor unreasonable, we deny the Horner's request for attorney fees.

**IV.**

**CONCLUSION**

We affirm the district judge's rulings as to the application of the statutory cap on non-economic damages and the decision that Sani–Top's judgment should not be offset by the money Home Depot paid as part of its settlement with the Horners. We also affirm the district judge's decision to uphold the jury's award of emotional distress damages to Virgil Horner and his conclusion that there was sufficient evidence to support the verdict. This Court reverses the award of economic damages as they relate to the alleged loss of Janessa's financial support because the record provides no evidence to support such damages. We award costs on appeal to respondents.

Chief Justice SCHROEDER and Justices EISMANN and JONES and Justice Pro Tem WALTERS concur.