IN THE SUPREME COURT OF THE STATE OF IDAHO

Docket No. 36275

CHARLES E. BRATTON and MARJORIE I.            )
BRATTON, husband and wife,                    )
                                              )
    Plaintiffs-Appellants,                  )      Boise, February 2011 Term
                                              )
v.                                            )      2011 Opinion No. 27
                                              )
JOHN R. SCOTT and JACKIE G. SCOTT,            )      Filed: March 17, 2011
husband and wife,                             )
                                              )      Stephen W. Kenyon, Clerk
    Defendants-Respondents.                 )
_____      )

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Honorable Renae J. Hoff, District Judge.

Order granting judgment notwithstanding the verdict is <u>affirmed</u>, order denying motion for new trial is <u>reversed</u>, and the case is <u>remanded</u>.

Moffatt, Thomas, Barrett, Rock & Fields, Chartered, Boise, for appellants. Nancy Jo Garrett argued.

Perkins Coie, LLP, Boise, for respondents. Shelly Cozakos Shannahan argued.

_____

J. JONES, Justice.

    This is an appeal from an order granting judgment notwithstanding the verdict (JNOV) in favor of John and Jackie Scott (the Scotts), vacating the damage verdicts awarded to Charles and Marjorie Bratton (the Brattons). The Brattons also appeal the district court's denial of their motion for a new trial. We affirm the order granting JNOV, reverse the order denying the motion for new trial, and remand the case for further proceedings consistent with this opinion.

## I.    Factual and Procedural History

    Harold and Janet Ford (the Fords) were the record owners of a large piece of property on Freezeout Road in Canyon County, Idaho. The Fords subdivided the property, conveyed Lot 32 to the Brattons by warranty deed on April 19, 1973, and retained the adjoining parcel, Lot 40.

The Brattons' deed provided for a three-foot easement, approximately 200 feet long, along the boundary line between Lot 40 and an adjoining lot "for the construction and maintenance of an irrigation ditch and for ingress and egress along said ditch boundary line" for the benefit of Lot 32. After conveying the property, and when the weather permitted, Harold Ford constructed an irrigation ditch across Lot 40 with a tractor and three-point ditcher. Due to the size of the ditcher, and the space used for maintenance of the ditch, both Harold Ford and Charles Bratton testified that the width of the easement was verbally expanded from three feet to twelve feet. However, the warranty deed only reflects the original three-foot easement.

After its creation, the Brattons used the ditch consistently for irrigating their property, and accessed the full twelve feet to do routine maintenance. Routine maintenance included burning and spraying weeds, as well as using a tractor or shovel to clear and re-fortify the ditch. Mr. Bratton also added nine to ten concrete pipes to prevent erosion of the ditch.

Harold Ford subsequently conveyed Lot 40 to Lois Rawlson by quitclaim deed on January 2, 1996. Ms. Rawlson then conveyed the property to the Scotts on September 13, 2005. The Scotts' deed reflects that the conveyance was "subject to any encumbrances or easements as appear of record or by use upon such property."

Approximately two years later, tension arose between the Brattons and the Scotts regarding access to, and maintenance of, the irrigation ditch. The parties disagree about the specific events leading up to this lawsuit. However, it was uncontested that Mr. Scott plowed over a portion of the irrigation ditch in the summer of 2006, although he claimed it was accidental. It was also uncontested that Mr. Bratton was on the Scotts' property in the spring of 2007 burning weeds when a conversation between the two men transpired. Mr. Bratton testified that Mr. Scott came running at him, demanding that he stop burning. However, Mr. Scott testified that he had a conversation with Mr. Bratton, during which he stomped out some of the flames extending beyond the ditch and agreed to fix the portion of the ditch he had harmed the previous season. Shortly thereafter, Mr. Scott used a small tractor to re-dig the section of the ditch he plowed over and also removed the concrete piping and placed it on the Brattons' property. Mr. Scott stated that removal of the concrete piping was necessary in order to repair the damage done to the ditch and access it with his tractor. However, the Brattons argue that such removal was not necessary and that the new ditch is smaller and closer to the fence line than its previous location.

After the pipes were removed, a deputy sheriff arrived at the Scotts' residence, informed them the Brattons had complained about the concrete piping left on their property, and suggested the Scotts remove them. Mr. Scott thereafter retrieved the concrete pipes and continues to store them on the upper part of his property. Mr. Scott also marked off the boundary of the three-foot easement with rope, and placed a no-trespassing sign on his property near the border with the Brattons' property.

The Brattons subsequently filed this suit on June 28, 2007, requesting injunctive and declaratory relief, as well as damages, requesting trial by jury. The Brattons sought declaratory relief recognizing their express three-foot easement and an additional nine-foot implied easement for access and maintenance purposes. They sought injunctive relief, prohibiting the Scotts from interfering with their access to the easement, as well as prohibiting the Scotts from coming within 600 feet of them. They also requested an underground piping system, paid for by the Scotts, to prevent further interference with the easement right, or, in the alternative, replacement of the ditch to its original condition. The Brattons also asserted a claim of negligence and tortious interference with their right to privacy or tortious stalking.[1] The Brattons filed a motion for partial summary judgment on their express three-foot easement, as well their implied easement. The court granted their motion with respect to the express easement but denied it as to the implied easement.[2]

The district court separated the trial into three phases. The first phase was an advisory determination on the implied easement theory, the second phase addressed the negligence and tortious interference claims, and the third phase addressed damages. During the first phase of the trial, the jury determined there was no implied 12-foot easement. In the second phase, the jury determined that the Scotts negligently interfered with the Brattons' easement, and that the Scotts' negligence was the proximate cause of the Brattons' harm. The jury also found that the Scotts had changed the irrigation ditch without written permission. However, the jury determined that these changes did not result in reduced water flow through the ditch. The jury found no basis for the Brattons' claims of interference with the easement by threats of harm, or interference with

---

[1] The Brattons withdrew the claim for tortious stalking in a subsequent amended complaint.
[2] The order on the motion for partial summary judgment merely reflects that the motion was denied. It does not indicate the effect of the ruling. The final judgment recites that, "With respect to [the Brattons'] declaratory relief claim seeking a declaration that they are entitled to an express easement, judgment is hereby confirmed in favor of [the Brattons] in accordance with the Court's Order Re: Motion for Partial Summary Judgment . . ." The judgment does not indicate on its face the width or location of the express easement.

their right to privacy. Thus, only the claims of negligence and failure to obtain written permission before altering the ditch went to the jury on the issue of damages. The jury awarded the Brattons $4,250 for changing the irrigation ditch without written permission and $2,250 to restore the ditch to its original state. The trial court subsequently granted the Scotts' JNOV motion on the damages, and denied the Brattons' motion for a new trial. The court found the Scotts to be the overall prevailing party and awarded them $44,576.15 in attorney fees and $9,753.41 in costs.

The Brattons appeal the court's grant of the JNOV motion on the issue of damages, the denial of their motion for a new trial, and the award of costs and attorney fees. The Scotts argue, without having filed a cross-appeal, that the district court erred in: (1) instructing on I.C. §§ 42-1204 and 1207, and (2) admitting evidence contradicting the express easement in the Brattons' warranty deed.

## II.   Issues on Appeal

I.      Whether the district court erred in granting the JNOV, striking the damage awards?

II.     Whether the district court's denial of the Brattons' motion for a new trial was in error?

III.    Whether the district court erred in applying the law of I.C. §§ 42-1204 and 42-1207, and in allowing evidence on an implied easement theory?

IV.     Whether the court erred in awarding the Scotts their attorney fees and costs?

**V.**      Whether the Scotts are entitled to attorney fees on appeal?

## III.   Analysis

### A. Standard of Review

The grant of a JNOV motion is reviewed by this Court under the same standard as the district court. *Karlson v. Harris*, 140 Idaho 561, 567, 97 P.3d 428, 434 (2004).

> A jury verdict must be upheld if there is evidence of sufficient quantity and probative value that reasonable minds could have reached a similar conclusion to that of the jury. In reviewing a grant or denial of a motion for JNOV the court may not reweigh evidence, consider witness credibility, or compare its factual findings with that of the jury. The court reviews the facts as if the moving party had admitted any adverse facts, drawing reasonable

inferences in favor of the non-moving party.

*Gillingham Const., Inc. v. Newby-Wiggins Const., Inc.*, 142 Idaho 15, 20, 121 P.3d 946, 951 (2005) (internal citations omitted). This determination is a question of law. *Karlson*, 140 Idaho at 567, 97 P.3d at 434.

A damage award must be supported by sufficient evidence in order to avoid a JNOV. *Griffith v. Clear Lakes Trout Co.*, 146 Idaho 613, 618, 200 P.3d 1162, 1167 (2009).

> This Court has held that evidence is sufficient if it proves the damages with reasonable certainty. Reasonable certainty requires neither absolute assurance nor mathematical exactitude; rather, the evidence need only be sufficient to remove the existence of damages from the realm of speculation. Ultimately however, it is for the trier of fact to fix the amount after determining the credibility of the witnesses, resolving conflicts in the evidence, and drawing reasonable inferences therefrom.

*Id.* (internal citations omitted). Thus, "[a] jury verdict must be upheld if there is evidence of sufficient quantity and probative value that reasonable minds could have reached a similar conclusion to that of the jury." *Horner v. Sani-Top, Inc.*, 143 Idaho 230, 233, 141 P.3d 1099, 1102 (2006).

Unlike a JNOV motion, this Court reviews a motion for a new trial for an abuse of discretion. *Schmechel v. Dille*, 148 Idaho 176, 179, 219 P.3d 1192, 1195 (2009). "A trial court has wide discretion to grant or refuse to grant a new trial, and on appeal this Court will not disturb that exercise of discretion absent a showing of manifest abuse." *Id.* (quoting *Dyet v. McKinley*, 139 Idaho 526, 529-30, 81 P.3d 1236, 1239-40 (2003)). To determine if a court abused its discretion, this Court asks:

> (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Schmechel*, 148 Idaho at 179, 219 P.3d at 1195. A district court may grant a motion for a new trial where errors in law occurred at trial. I.R.C.P. 59(a)(7). "Where prejudicial errors of law have occurred, the district court has a duty to grant a new trial, even though the verdict is

supported by substantial and competent evidence. *Schmechel*, 148 Idaho at 180, 219 P.3d at 1196.

**B.  The Court Did Not Err in Striking the Damage Awards**

The jury awarded the Brattons damages in the sum of $2,250 for the restoration of the ditch and $4,250 for the Scotts' failure to obtain written permission before relocating the ditch. The Brattons assert that the district court erred in granting JNOV with respect to both of the damage awards. The Scotts contend that the district court correctly granted JNOV because neither award was supported by competent evidence in the record.

The Brattons argue that the district court's decision to strike the $2,250 restoration award is in error because the jury was competent to determine the proper amount of such damages. The Brattons were not permitted to present any cost evidence for restoration of the ditch because this evidence had not been disclosed during discovery.[3] Rather, they argue that the common knowledge of the Canyon County jury regarding irrigation ditches is sufficient to support the award. However, the purported knowledge of a jury is no substitute for competent evidence establishing a claim for damages.

The owner of an irrigation ditch has an easement right in land upon which the ditch is located. *See* I.C. § 42-1102. The owner of the ditch is the dominant estate holder, whereas the landowner where the ditch is located is the servient estate holder. *See, e.g., Abbott v. Nampa Sch. Dist. No. 131,* 119 Idaho 544, 549-50, 808 P.2d 1289, 1294-95 (1991). The owner of the servient estate can use its property "in any manner not inconsistent with, or which [does] not materially interfere with, the [dominant estate's] use of its easement." *Nampa & Meridian Irr. Dist. v. Mussell*, 139 Idaho 28, 33, 72 P.3d 868, 873 (2003).

Where a servient estate unreasonably interferes with a dominant estate's easement, the dominant estate is entitled to damages. *Id.* An appropriate measure of damages for such interference is the "amount necessary to repair the injury and put the land in the condition it was at the time immediately preceding the injury . . . ." *Id.* (citing *Young v. Extension Ditch Co.*, 13 Idaho 174, 182, 89 P. 296, 298 (1907)). This is true even where damage to a ditch easement occurs accidentally. *See Aguirre v. Hamlin*, 80 Idaho 176, 178, 327 P.2d 349, 350 (1958) (requiring servient estate owner that destroyed ditch "obscured by sagebrush and weed growths"

---

[3] During discovery, the Brattons only disclosed damages regarding crop loss (primarily for reseeding the pasture), boarding costs for their horses, emotional distress damages, and the cost to install an underground ditch system. However, the Brattons never provided any cost evidence for restoration of the ditch to its original condition.

when plowing the field to replace ditch to previous capabilities). This measure of damages is appropriate because a canal or irrigation ditch has no value except for transporting water, and the goal of compensatory damages is "reimbursement of the plaintiff for the actual loss suffered . . . ." *Mussell*, 139 Idaho at 33-34, 72 P.3d at 873-74. Thus, "awarding damages *based upon the cost* of restoring or repairing [the ditch] so that it can transmit water would neither be a windfall to the [dominant estate owner] nor result in economic waste." *Id.* at 34, 72 P.3d at 874 (emphasis added).

To this end, a dominant estate owner must present cost evidence for restoration of the ditch in order to remove the claim from the realm of speculation. "A person asserting a claim of damages has the burden of proving not only a right to damages, but also the amount of damages." *Martsch v. Nelson*, 109 Idaho 95, 100, 705 P.2d 1050, 1055 (Ct. App. 1985). Thus, where a plaintiff presents no evidence to support a jury's damage award, the court must grant a JNOV motion in favor of the defendant. *Horner*, 143 Idaho at 237, 141 P.3d at 1106. "[I]n order for an award of special damages to be upheld, the plaintiff must put on some type of proof to support the damage award. Compensatory awards based on speculation and conjecture will not be allowed." *Id.* (internal quotation omitted).

In this case, the Brattons are the dominant estate owners because they are the owners of the irrigation ditch running through the Scotts' property. When the Scotts caused damage to the irrigation ditch by plowing over a portion of it, and possibly changing its location, the Brattons became "entitled to recover the amount necessary to repair the injury and put the land in the condition it was at the time immediately preceding the injury . . . ." *Mussell*, 139 Idaho at 33, 72 P.3d at 873 (quoting *Young*, 13 Idaho at 182, 89 P. at 298). However, the Brattons failed to introduce any evidence on what it would cost to restore the ditch to its previous condition[4] and were barred from introducing evidence relating to piping the ditch underground.

Rather, like in *Horner*, where the Court was concerned about an award of compensatory damages unsupported by any evidence submitted at trial, the Brattons presented only generalized statements of where the new ditch would be located, what equipment might be used in its construction, and how it should be maintained. The Brattons' expert, Mr. Wielang, testified that

---

[4] This failure, of course, was a result of the district court's refusal to permit the introduction of evidence as to the cost of restoration, based upon the Brattons' failure to produce such evidence in discovery. The Brattons have not appealed this ruling, although they contend the district court erred as a matter of law by too strictly limiting proof regarding the allowable means for restoring a ditch.

the ditch's reconstruction would require the use of a tractor, some concrete piping, and a graveled bottom. Mr. Wielang also recommended that the ditch be located approximately six feet from the fence, that it contain a sod bottom to prevent erosion, and that a mixture of road and clay material be added to prevent rodent damage. In sum, Mr. Wielang provided general testimony about how to construct and stabilize a replacement ditch, but provided no evidence regarding specific costs associated with such restoration.

Additionally, Brattons' counsel admitted during oral argument on the JNOV motion that the jury reached its conclusion without specific cost evidence.

> [The jury] brought to that determination, *just so fortuitously*, almost the exact amount that it would cost to do that ditch. If we put together those elements that Mr. Wielang testified to, they awarded $2,250 to replace that ditch, and that is just crazily close to what it would cost to do that.

(emphasis added). While it is true that jurors are free to apply their personal knowledge and experience when deliberating on an issue, an admittedly fortuitous jury award falls within the realm of speculation and conjecture that is prohibited in an award for damages. The Brattons failed to provide any evidence of the costs required to repair their irrigation ditch, and have not appealed the court's evidentiary decision to exclude such evidence. Therefore, because there was no cost evidence to support the jury's $2,250 award for restoring the ditch, the JNOV was properly granted.

The jury awarded the Brattons $4,250 as damages for the Scotts' violation of I.C. § 42-1207, which requires the servient estate owner to obtain the written permission of the ditch owner before changing the ditch. The district court granted JNOV with regard to this award, based upon a lack of evidence to support an award. The judge indicated that only nominal damages could be awarded for violation of the statute where there had been no diminished flow of water to the ditch owner's property and that an award of the magnitude granted by the jury was not nominal. The Brattons argue that the court erred because no impediment to water flow is necessary for a finding of general damages under I.C. § 42-1207 and that the award "was reasonably based on the evidence allowed by the trial court, collective knowledge, and experience of the jury." The Scotts argue that no damages may be awarded under the statute unless it is shown that the servient estate owner caused an impediment to the flow of the water

and the jury specifically found that this had not occurred. In addition, they assert that the Brattons failed to introduce evidence to support their damage claims under I.C. § 42-1207.

The Brattons present no authority in support of their contention that general damages may be awarded under I.C. § 42-1207 where the servient estate owner changes the ditch location without obtaining the prior written consent of the ditch owner. That section only permits the award of damages where the actions of the servient estate owner "impede the flow of water [in the ditch], or . . . otherwise injure[s]" persons using or interested in the ditch. This language cannot be read to authorize an award of general damages and there are no Idaho cases that would support such an award.

As with the Brattons' other damage award, there is no competent evidence to support an award under I.C. § 42-1207. Indeed, the district court barred the Brattons from introducing any such evidence. Although the court erred in limiting the Brattons' ability to present such evidence, the $4,250 award cannot be sustained without any evidence of damage.

## C. A New Trial is Warranted Due to Errors of Law

The Brattons argue that procedural irregularities and errors in law occurred during the jury trial requiring a new trial. Specifically, they claim the district court's decision to separate the trial into three phases caused an increased trial burden and confused the jury. They also argue the court erred by instructing on common law implied easement theories because they are entitled to a statutory easement. Additionally, they argue that the court erred in its interpretation of I.C. § 42-1207 by requiring all injuries thereunder to be tied to an impediment to water flow. They also claim the court abused its discretion by continually warning the Brattons that, should they lose the case, the Scotts would be awarded attorney fees. Finally, they argue that the court's erroneous interpretation of I.C. §§ 42-1102 and 42-1207 caused it to improperly exclude the Brattons' evidence regarding damages.

The Scotts argue there was no abuse of discretion on any of these grounds. They argue that the district court properly refused to apply I.C. § 42-1102 because that section is limited to rights-of-way of riparian property owners, which is not the situation involved in this case. They also argue that the "bifurcation" of the trial equally impacted both parties and did not create an undue burden for the Brattons.

Because the district court erred in barring the introduction of evidence relevant to the Brattons' damage claims, including restoration of the ditch and compensable injuries resulting

from interfering with the ditch, we conclude that the district court abused its discretion by declining to grant the Brattons' motion for new trial.

When a servient estate owner, acting without permission of the ditch owner, changes the course of the ditch on his property, he subjects himself to the obligation to restore the ditch to its previous condition or, alternately, to an award of damages to accomplish the same, and to an award of damages for injuries resulting from the unauthorized interference. The Brattons were entitled to offer evidence regarding the steps that needed to be taken to effectively replace the ditch and the injuries that may have been sustained by interference with it. The district court erred in excluding evidence that was relevant on both counts. With regard to restoration of the ditch, the court stated "this trial is going to be about damages related only to restor[ing] the ditch on the easement to the exact condition that it was before the Scotts changed it." While in the usual case this may be the appropriate course to follow, in this particular case the Brattons wished to have the opportunity to show that another course of action may be more appropriate in restoring the functionality of the ditch. They should have been permitted to do so. With regard to the issue of damages resulting from the interference, the court assumed that such damages would only be appropriate if there was an impediment to water flow. The court too narrowly construed the provisions of I.C. § 42-1207.

With respect to the issue of ditch restoration, the *Mussell* case illustrates the proper course to follow where there is evidence to indicate that restoration of a ditch to its previous condition may not either be feasible or the most expedient and cost effective fix. In that case, Mr. Mussell, without first consulting the irrigation district, excavated almost the entire length of the bank of the irrigation district's lateral adjacent to his property, compromising the integrity of the lateral. 139 Idaho at 31, 72 P.3d at 871. The irrigation district decided to repair the portion of the lateral adjoining the Mussells' property by replacing it with a concrete pipeline, rather than agreeing to Mr. Mussell's proposal to build a retaining wall, concluding that the retaining wall would not prevent failure of the lateral. *Id.* On appeal, the Mussells argued "that they were only liable for the cost of restoring the Kennedy Lateral to its original condition as an old, earthen ditch and not for the cost of the piping. . ." *Id.* at 34, 72 P.3d at 874. However, we held:

> The District was entitled to recover from the Mussells the reasonable cost of restoring the Lateral so that it could transmit water. The Mussells did not show that it would be feasible simply to replace the dirt excavated by Mr. Mussell, and the trial testimony was that such repair would not be feasible. The district court

- 10 -

> found that the proposed retaining wall "would continue to leave the Kennedy Lateral vulnerable to failure" and "[t]he piping of this section of Kennedy Lateral was the most expedient and cost effective fix for the loss of the subadjacent support."

*Id.* The Court also upheld damage awards for replacing an existing bridge with a pipeline "to handle the increased water speed and pressure caused by the piping" of the lateral and for extending the length of the pipeline beyond the Mussells' property in order "to dissipate the additional energies generated from the increased velocity of water flowing through the pipeline rather than the earthen lateral." *Id.* at 34−35, 72 P.3d at 874−75. Thus, while restoring an irrigation ditch to its original configuration may be appropriate in the usual case, in cases where such action may not be adequate, alternate means may be required in order to remedy the unauthorized ditch relocation.

In this case, the Brattons sought to introduce evidence to support their contention that in order to adequately restore the function of the ditch, it needed to be placed underground. Their expert testified that there was a substantial decline in elevation from the point the ditch entered the Scotts' property to the point that it exited to the Brattons' property, requiring the placement of concrete pipe, sodding, gravel, and bentonite, in order to maintain the functionality of the ditch, slow its flow, and prevent deterioration of its banks. The witness attempted to testify that the alternative of placing the pipeline underground would be the best solution. Specifically, when asked whether restoring the ditch as an above ground ditch, "would that then give you the best integrity and least amount of erosion possible," he responded, "No. The best situation would be a pipe continuous." The judge cut him off at this point, stating "We're not hearing evidence on that." Thus, the Brattons were prevented from presenting their evidence regarding the best way to restore the integrity of the ditch, based on the court's erroneous conclusion that the ditch had to be restored to the "exact condition" it was in prior to its removal. This is an error of law that amounts to an abuse of discretion, necessitating a new trial on this issue.

With regard to the second damage issue, I.C. § 42-1207 provides that a servient estate owner may alter an irrigation ditch at its own expense, so long as there is no impediment to water flow or injury to persons with an interest in the ditch. I.C. § 42-1207. However, the statute requires the servient estate owner to obtain the written permission of the ditch owner prior to altering the ditch. The relevant language of statute says:

> Where any ditch, canal, lateral or drain or buried irrigation conduit has heretofore been, or may hereafter be, constructed across or beneath the lands of another, the person or persons owning or controlling said land shall have the right at their own expense to change said ditch, canal, lateral or drain or buried irrigation conduit to any other part of said land, but such change must be made in such a manner as not to impede the flow of the water therein, *or to otherwise injure any person or persons using or interested in such ditch*, canal, lateral or drain or buried irrigation conduit. Any increased operation and maintenance shall be the responsibility of the landowner who makes the change.
>
> . . .
>
> The written permission of the owner of a ditch, canal, lateral, drain or buried irrigation conduit must first be obtained before it is changed or placed in buried pipe by the landowner.

I.C. § 42-1207 (emphasis added).[5]

Because a servient estate owner can neither decrease the water flow, nor cause injury to the dominant estate, this statute protects two distinct property rights—water rights and ditch rights. "The statute is broadly worded and does not specify that it is only the amount of water to which downstream users are entitled under the water laws of this state which may not be impeded." *Savage Lateral Ditch Water Users Ass'n v. Pulley*, 125 Idaho 237, 242, 869 P.2d 554, 559 (1993). Rather, ditch rights are "independent of the right to the use of the water conveyed therein." *Id.* (citing *Simonson v. Moon,* 72 Idaho 39, 47, 237 P.2d 93, 98 (1951)). Thus, I.C. § 42-1207 protects a dominant estate owner from injuries relating to an impediment to water flow, as well as any other injuries suffered by the dominant estate owner as a result of the servient estate owner's interference with the ditch.

Although the statute does not delineate the type of ditch right injuries that are compensable, this Court has previously recognized that increased maintenance burdens and forced rotation of use are compensable injuries. For example, in *Pulley*, the Court specifically recognized that increased maintenance burdens, even without an impediment to water flow, are an independent source of injury protected by the statute.

> [T]here was other evidence of injury beyond impedance of flow, including extensive testimony supporting the fact that maintenance of the relocated [ditch] on the [servient estate] was rendered much more difficult and time-consuming as a result of its relocation. *An increased maintenance burden caused other users is an injury*

---

[5] The written permission requirement was added to the statute in 1994. 1994 Idaho Sess. Laws, ch. 151, § 1, p. 345.

- 12 -

*prohibited under I.C. § 42-1207.*

125 Idaho at 243, 869 P.2d at 560 (emphasis added) (citing *Tomchak v. Harris,* 54 Idaho 448, 32 P.2d 1025 (1934)). Forced rotation of use is also recognized as an injury under the statute. *See Pulley*, 125 Idaho at 243-44, 869 P.2d at 560-61. *See also Moon,* 72 Idaho at 46, 237 P.2d at 97-98. In *Moon*, one of the dominant estate owners, as a result of the alterations to ditches by the servient estate owner, had to "rotate their use of the ditch with the other parties. . . . This is an injury to the Moons within the meaning of the statute." 72 Idaho at 46, 237 P.2d at 97.

Additionally, when there are minor increases in maintenance burdens accompanied by other injuries, such as forced rotation of use, these combined injuries are also compensable injuries under the statute. "Although a minor increase in the length of a ditch or other conditions which negligibly increase its maintenance are insufficient injuries by themselves to constitute a violation of the statute, when such burdens are accompanied by forced rotation of ditch use or other inconvenience, the combined injuries are sufficient." *Pulley*, 125 Idaho at 243-44, 869 P.2d at 560-61 (citing *Moon*, 72 Idaho at 46, 237 P.2d at 97-98).

While the remedy sought for I.C. § 42-1207 injuries is generally in the nature of a restoration order,[6] a party may also seek monetary damages. Such monetary damages are often sought in relation to crop damages[7] but are in no way limited by I.C. § 42-1207 to this type of injury. In sum, I.C. § 42-1207 does protect dominant estate owners from injuries beyond those that may result from an impediment to water flow and such injuries can be compensated by a monetary damage award.

In this case, the district court correctly instructed the jury on the language of I.C. § 42-1207, but misunderstood the type of injuries compensable thereunder. Specifically, the court made oral rulings that limited damages thereunder to injuries related to an impediment to water flow. Additionally, the court provided the jury with a special verdict form that only recognized this narrow type of injury. The special verdict form asked the following questions in regard to I.C. § 42-1207:

Question No. 3: Did the Scotts change the irrigation ditch? [Yes]

---

[6] For example, in *Pulley*, the Court required that the original ditch be reconstructed in its original location as a form of injunctive relief for the dominant estate owners. 125 Idaho at 244, 869 P.2d at 561.

[7] In both *Pulley* and *Moon*, the dominant estate owners sought compensatory awards for damages to their crops. *See Pulley*, 125 Idaho at 248-49, 869 P.2d at 565-66; *Moon*, 72 Idaho at 48, 237 P.2d at 98. *See also Aguirre*, 80 Idaho at 182, 327 P.2d at 352.

- 13 -

Question No. 4: Did the Scotts have written permission to change the irrigation ditch? [No]

Question No. 5: Did changing the irrigation ditch result in a diminished flow of water to the Brattons' property? [No]

This special verdict form does not recognize a basis for damages other than those related to an impediment to water flow. Based on the jury's finding that there had been no diminished water flow, the district court barred all evidence sought to be introduced by the Brattons' relating to Mr. Scott's interference with their ditch. This error in law was clearly prejudicial to the Brattons because they were unable to seek compensation for injuries unrelated to an impediment to water flow. For example, the Brattons made offers of proof to recover damages for the increased ditch maintenance required by the change in the ditch, and for reseeding the pasture, off-site boarding costs for their horses, and increased feeding costs.[8] They claimed these damages, if permitted, would have been demonstrated to have resulted from the Scotts' interference with the ditch, in violation of I.C. § 42-1207. However, the court noted that crop-loss-type damages would only be permissible "if the jury had found that there was a diminished flow of water to the Brattons' property . . . ." This statement demonstrates that the court misunderstood I.C. § 42-1207 to protect a dominant estate owner only from damages related to an impediment to water flow. The district court erred in so limiting the type of damages available under this section and in barring the Brattons' proof with regard to damages they claim to have resulted from the Scotts' interference. The Brattons were clearly prejudiced and, thus, the district court's denial of their motion for new trial constituted an abuse of discretion. The Brattons are entitled to a new trial on this issue.

### D. Guidance on Remand

Because we remand for a new trial on the damage issues, it is not necessary to address the additional assignments of error raised by the Brattons with regard to the denial of their motion for new trial. Neither will we address the instructional errors raised by the Scotts, because they failed to file a cross-appeal. *Miller v. Bd. of Trustees*, 132 Idaho 244, 248, 970 P.2d 512, 516 (1998).

---

[8] The Brattons also asserted that they were entitled to recover damages for the alleged decrease in the value of their property by virtue of the change in the ditch. This appears to be a bit far afield and perhaps they might want to reconsider the assertion of such a claim on remand.

On remand, the trial should focus on the Brattons' claim for damages, including the cost of restoration of the ditch, and the damages claimed to have resulted from the Scotts' interference with the same. The latter issue may encompass crop damages, if any, that may have been sustained between the time the ditch was removed and the time it was restored. Since the new trial will focus on the third phase of the trial, there is no need to disturb matters that may have been established during the first two phases, including the jury's finding that the change in the irrigation ditch did not result in a diminished flow of water to the Brattons' property. This question, however, does not address issues regarding ditch velocity, maintenance, or the necessity of remedial measures.

The district court's ruling in the first phase—that the Brattons held an express three-foot easement across the Scotts' property—has not been appealed and may stand. However, the court's judgment, while describing the easement as "an express easement," does not describe its width, length, or location. The judgment merely refers to the "Court's Order Re: Motion for Partial Summary Judgment entered on March 4, 2008." The partial summary judgment order does not describe the easement. "[I]t is well settled under Idaho law that any judgment determining the existence of an easement must also specify the character, width, length and location of the easement." *Beckstead v. Price*, 146 Idaho 57, 66, 190 P.3d 876, 885 (2008) (quoting *Schneider v. Howe*, 142 Idaho 767, 774, 133 P.3d 1232, 1239 (2006)). It is especially important to determine the location of the easement in this case because the warranty deed, which is the only document of record describing the width and location of the easement, indicates the easement to be in a different location than it was when the ditch was built, as well as when Mr. Scott relocated it. The warranty deed indicates the ditch easement to be along the boundary line between the Scotts' Lot 40 and the adjoining lot and to be three feet in width. Presumably, the issue regarding the location of the ditch will need to be resolved on remand. At that time, the parties might also find it to be appropriate to seek to establish the width and location of the secondary easement granted to ditch owners under I.C. § 42-1204 for the purpose of "cleaning, maintaining and repairing the ditch." *Moon*, 72 Idaho at 48, 237 P.2d at 98. Hopefully, the parties will not waste additional time litigating the issue of whether or not the Brattons have an implied easement by prior use.[9]

---

[9] For one thing, it is clear that the Brattons cannot establish the second element of such an easement—"apparent continuous use long enough before separation of the dominant estate to show that the use was intended to be

**E. Attorneys Fees Are Not Appropriate At Either Level**

As we have upheld the district court's JNOV order and reversed the order denying a new trial, it is premature to determine which party will ultimately prevail below. Therefore, the award of attorney fees granted in district court will be vacated. We decline to award attorney fees on appeal for the same reason. The issue of attorney fees incurred in district court prior to this point, as well as those incurred in the appeal, may be considered by the district court in making any subsequent fee award to the prevailing party in proceedings on remand. In this regard, it might be well to make a comment regarding the Brattons' assertion that the district court erred by warning that attorney fees might be awarded against the losing party at trial. The district court appropriately made such comments in the context of advising the parties about the cost of lengthy court proceedings and urging that they pursue mediation rather than litigation. Hopefully, the parties will take these comments to heart as they move forward. It is distressing to see so much expenditure of attorney fees on a case that could easily have been settled for substantially less with just a little good faith on the part of both sides.

## IV. Conclusion

The court correctly granted the JNOV with respect to the damage awards and, therefore, the JNOV is affirmed. The district court erred in denying the motion for new trial and, therefore, that order is reversed and the case is remanded for proceedings consistent with this opinion. The attorney fee award made by the district court is vacated and we decline to award fees and costs on appeal.

Chief Justice EISMANN and Justices BURDICK, W. JONES and HORTON CONCUR.

---

permanent." *Thomas v. Madsen*, 142 Idaho 635, 638, 132 P.3d 392, 395 (2006). The ditch was not even constructed until after the express easement was granted in the warranty deed. Secondly, the issue is superfluous because the Brattons have a statutory maintenance easement pursuant to I.C. § 42-1204.