W. JONES, J.,
specially concurring.
I join the majority’s holding that the Estate cannot recover damages available under the wrongful death statute, I.C. § 5-311, such as loss of care, comfort, companionship, and society. See generally Horner v. Sani-Top, Inc., 143 Idaho 230, 141 P.3d 1099 (2006) (discussing available damages). I further join the majority’s holding that Respondents waived the estoppel issue by failing to cite authority or to argue the point. I write separately to highlight my reasons for reaching those conclusions.
The key to resolving this case is to differentiate between two types of indemnity: coverage that is defined solely by tort-law principles and coverage defined by contract, i.e. the Policy. “COVERAGE P-l — UNDER-INSURED MOTORIST” falls into the first category. It provides: “We will pay damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by an insured and caused by an occurrence.”[1] In this case, tragically, Mrs. Eisenman died shortly after the accident. At the moment she died, she lost not only her right to recover against the underinsured motorist in tort, see Bishop v. Owens, 152 Idaho 616, 272 P.3d 1247, 1250 (2012), but also the coterminous right to recover against Farm Bureau under Coverage P-l.
Farm Bureau could have worded Coverage P-l differently to move it into the second category of indemnity. For example, it could have promised: “In the event of the death of an insured, we will pay damages which, but for the death of the insured, the insured would be legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by an insured and caused by an occurrence.” This phrasing would have extended Coverage P-l to situations in which the insured died, notwithstanding the fact that she could not have recovered anything against the underinsured motorist; however, this is not the policy that Farm Bureau wrote and that Mrs. Eisenman purchased.
An example of the second category of indemnity that does appear in the Policy is “COVERAGE Q — MEDICAL PAYMENTS.” It provides: “We will pay the reasonable and necessary medical and funeral expenses incurred within 3 years from the date of occurrence to each insured who sustains bodily injury caused by an occurrence.” Similarly, under “SECTION III ENDORSEMENTS” Farm Bureau agreed “to pay $5,000 if an insured dies solely as a result of bodily injury caused by an occurrence while occupying or struck by a motor vehicle. Death of the insured must occur within 90 days after the date of the occurrence.” Neither of these provisions is limited by what Mrs. Eisenman could have recovered in tort, and her death did not abate her contractual right to indemnification under them.
With this distinction in mind, it is clear that Farm Bureau’s payment of medical and funeral expenses could not estop it from refusing to pay wrongful death damages, as Respondents argue. Upon Mrs. Eisenman’s death, the sums due under Coverage Q were properly payable, whereas nothing was due under Coverage P-l.
Finally, I must note my disagreement in one respect with Justice Jim Jones’ concurrence. He states: “had the insured lingered on for weeks or months and sustained pain and suffering or loss of income, those elements of damage would also be recoverable under the Policy.” There is no basis for such a conclusion in the Policy. Coverage P-l would have indemnified Mrs. Eisenman for these damages only if she survived until she won a judgment against the underinsured motorist. This is so because a judgment, unlike a mere tort chose in action, does not abate when the decedent dies, but instead remains enforceable by the decedent’s estate through her personal representative upon ap *558 plication. See I.C. § 11-106(1). Without a judgment against the underinsured motorist, we would not be at liberty to disregard the fact that Mrs. Eisenman’s death extinguished her tort claims, regardless of whether she survived for a week, a month, or a year.
Justice Jim Jones omits the critical language of the Policy stating that Mrs. Eisenman can recover for what she could recover “from the owner or operator of an underinsured motor vehicle.” As previously noted, Mrs. Eisenman could not recover anything from the owner or operator once she was dead. Mrs. Eisenman would have been entitled to recover those damages against the underinsured motorist had she lived, but once she died, that right disappeared because the only theory upon which she could recover any damages from the underinsured motorist is a tort theory and torts abate upon death. Castorena v. Gen. Elec., 149 Idaho 609, 614, 238 P.3d 209, 214 (2010) (recognizing the generally accepted common law rule that “where a person was injured by the wrongful act or omission of another any right for civil relief ended with the injured party’s death.”); Steele v. Kootenai Med. Ctr., 142 Idaho 919, 920, 136 P.3d 905, 906 (2006) (recognizing the Idaho Legislature has adopted the common law of England providing a personal injury action abates with the death of the victim); Hayward v. Valley Vista Care Corp., 136 Idaho 342, 351 n. 2, 33 P.3d 816, 825 n. 2 (2001) (“[A]n action for personal injuries does not survive the death of the victim of the tort.”); Evans v. Twin Falls Cnty., 118 Idaho 210, 217, 796 P.2d 87, 94 (1990) (“[T]he common law has not been modified or changed in Idaho either by statute or the Constitution, and therefore the general common law rule that personal causes of action do not survive the death of the injured party is the rule in Idaho.”); Vulk v. Haley, 112 Idaho 855, 858-59, 736 P.2d 1309, 1312-13 (1987) (holding that pain and suffering does not survive the death of the injured); Craig v. Gellings, 148 Idaho 192, 219 P.3d 1208 (Ct.App.2009) (affirming district court’s order dismissing plaintiffs personal injury action on the ground her claims abated when she died during the pendency of the action). Mrs. Eisenman obviously had no contractual basis on which to recover any damages against the underinsured motorist. There is nothing in the Policy providing damages for pain and suffering or an insured’s lost income after the death of the insured. As noted above, only reasonable and necessary medical and funeral expenses incurred within three years from the date of the accident and a death benefit of $5,000 are payable pursuant to the Policy because those damages are a matter of contract between the insured and the insurer.
The bottom line is that Coverage P-1 only provides for payment of damages Mrs. Eisenman could legally recover from the under-insured driver and it is clear that once she died she could not recover anything from him.

. Boldface words and phrases are defined in the Policy.